[562 U.S. 521]

HENRY W. SKINNER, Petitioner

v

LYNN SWITZER, DISTRICT ATTORNEY FOR THE 31st JUDICIAL
DISTRICT OF TEXAS

562 U.S. 521, 131 S. Ct. 1289, 179 L. Ed. 2d 233, 2011 U.S. LEXIS 1905

[No. 09-9000]

Argued October 13, 2010. Decided March 7, 2011.

**APPEARANCES OF COUNSEL ARGUING CASE**

**Robert C. Owen** argued the cause for petitioner.
**Gregory S. Coleman** argued the cause for respondent.

237

Ginsburg, J., delivered the opinion of the Court, in which Roberts, C. J., and Scalia, Breyer, Sotomayor, and Kagan, JJ., joined. Thomas, J., filed a dissenting opinion, in which Kennedy and Alito, JJ., joined.

## OPINION OF THE COURT

[562 U.S. 524]

Justice **Ginsburg** delivered the opinion of the Court.

We granted review in this case to decide a question presented, but left unresolved, in *District Attorney's Office for Third Judicial Dist.* v. *Osborne*, 557 U.S. 52, 65–67, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (2009): May a convicted state prisoner seeking DNA testing of crime-scene evidence assert that claim in a civil rights action under 42 U.S.C. § 1983, or is such a claim cognizable in federal court only when asserted in a petition for a writ of habeas corpus under 28 U.S.C. § 2254? The Courts of Appeals have returned diverse responses. Compare *McKithen* v. *Brown*, 481 F.3d 89, 99 (CA2 2007) (claim seeking DNA test-

ing is cognizable under § 1983); *Savory* v. *Lyons*, 469 F.3d 667, 669 (CA7 2006) (same); and *Bradley* v. *Pryor*, 305 F.3d 1287, 1290–1291 (CA11 2002) (same), with *Harvey* v. *Horan*, 278 F.3d 370, 375 (CA4 2002) (claim is not cognizable under

[562 U.S. 525]

§ 1983); and *Kutzner* v. *Montgomery County*, 303 F.3d 339, 341 (CA5 2002) *(per curiam)* (same).

In *Wilkinson* v. *Dotson*, 544 U.S. 74, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005), we comprehensively surveyed this Court's decisions on the respective provinces of § 1983 civil rights actions and § 2254 federal habeas petitions. ■ Habeas is the exclusive remedy, we reaffirmed, for the pris-

238

oner who seeks "immediate or speedier release" from confinement. *Id.*, at 82, 125 S. Ct. 1242, 161 L. Ed. 2d 253. Where the prisoner's claim would not "necessarily spell speedier release," however, suit may be brought under § 1983. *Ibid.* Adhering to our opinion in *Dotson*, we hold that a postconviction claim for DNA testing is properly pursued in a § 1983 action. Success in the suit gains for the prisoner only access to the DNA evidence, which may prove exculpatory, inculpatory, or inconclusive. In no event will a judgment that simply orders DNA tests "necessarily impl[y] the unlawfulness of the State's custody." *Id.*, at 81, 125 S. Ct. 1242, 161 L. Ed. 2d 253. We note, however, that the Court's decision in *Osborne* severely limits the federal action a state prisoner may bring for DNA testing. *Osborne* rejected the extension of substantive due process to this area, 557 U.S., at 72, 129 S. Ct. 2308, 174 L. Ed. 2d 38, and left slim room for the prisoner to show that the governing state law denies him procedural due process, see *id.*, at 71, 129 S. Ct. 2308, 174 L. Ed. 2d 38.

## I

In 1995, a Texas jury convicted petitioner Henry Skinner and sentenced him to death for murdering his live-in girlfriend, Twila Busby, and her two sons. Busby was bludgeoned and choked with an axe handle and her sons were stabbed to death; the murders were committed in the house Busby shared with Skinner.

Skinner never denied his presence in the house when the killings occurred. He claimed, however, that he was incapacitated by large quantities of alcohol and codeine. The potent alcohol and drug mix, Skinner maintained at trial, rendered him physically unable to commit the brutal murders charged against him. Skinner identified, as a likely

[562 U.S. 526]

perpetrator, Busby's uncle, Robert Donnell (now deceased), an ex-convict with a history of physical and sexual abuse.[1] On direct appeal, the Texas Court of Criminal Appeals (CCA) affirmed Skinner's conviction and sentence. *Skinner v. State*, 956 S.W.2d 532, 546 (1997). The CCA's opinion described the crime-scene evidence in detail:

"As they approached the house . . . , the police noticed a trail of blood spots on the ground running from the front porch to the fence line. There was a blood smear on the glass storm door and a knife on the front porch. Upon entering the residence, the police found Twila's dead body on the living room floor. . . . An ax handle stained with blood and hair was leaning against the couch near her body and a black plastic trash bag containing a knife and a towel with wet brownish stains on it was laying between the couch and the coffee table.

"[One officer] proceeded to the bedroom where [Busby's two sons] usually slept in bunk beds. [The officer] found [one] dead body laying face down on the upper bunk, covered by a blood spotted blanket. . . . A door leading out of the bedroom and into a utility room yielded further evidence. [He] noticed a bloody handprint located

---

1. At trial, a defense witness testified that, on the evening of the killings, Busby had spurned Donnell's "rude sexual advances." *Skinner v. State*, 956 S.W.2d 532, 535 (Tex. Crim. App. 1997). A neighbor related at a federal postconviction hearing that she observed Donnell, a day or two after the murders, thoroughly cleaning the carpets and inside of his pickup truck. See *Skinner v. Quarterman*, 528 F.3d 336, 345 (CA5 2008).

about 24 inches off the floor on the frame of this door. He also noted a bloody handprint on the door knob of the door leading from the kitchen to the utility room and a handprint on the knob of the door exiting from the utility room into the backyard.

"[When] police arrested [Skinner] . . . [t]hey found him standing in a closet wearing blood-stained socks and blood-stained blue jeans." *Id.*, at 536.

[562 U.S. 527]

Investigators also retained vaginal swabs taken from Busby.

In preparation for trial, "the State tested the blood on [Skinner's] clothing, blood and hair from a blanket that partially covered one of the victims, and hairs on one of the victim's back and cheeks." *Skinner* v. *State*, 122 S.W.3d 808, 810 (Tex. Crim. App. 2003). The State also tested fingerprint evidence. Some of this evidence—including bloody palm prints in the room where one victim was killed—implicated Skinner, but "fingerprints on a bag containing one of the knives" did not. *Ibid.* Items left untested included the knives found on the premises, the axe handle, vaginal swabs, fingernail clippings, and additional hair samples. See *ibid.*[2]

In the decade following his conviction, Skinner unsuccessfully sought state and federal postconviction relief. See *Skinner* v. *Quarterman*, 576 F.3d 214 (CA5 2009), cert. denied, 559 U.S. 975, 130 S. Ct. 1689, 176 L. Ed.

2d 187 (2010). He also pursued informal efforts to gain access to untested biological evidence the police had collected at the scene of the crime.[3]

In 2001, more than six years after Skinner's conviction, Texas enacted Article 64, a statute allowing prisoners to gain postconviction DNA testing in limited circumstances. Tex. Code Crim. Proc. Ann., Art. 64.01(a) (Vernon Supp. 2010). ■ To obtain DNA testing under Article 64, a prisoner must meet one of two threshold criteria. He may show that, at trial, testing either was "not available" or was "available, but

[562 U.S. 528]

not technologically capable of providing probative results." Art. 64.01(b)(1)(A). Alternatively, he may show that the evidence was not previously tested "through no fault" on his part, and that "the interests of justice" require a postconviction order for testing. Art. 64.01(b)(1)(B). To grant a motion for postconviction testing, a court must make further findings, prime among them, the movant "would not have been convicted if exculpatory results had been obtained through DNA testing," and "the [Article 64] request . . . [was] not made to unreasonably delay the execution of sentence or administration of justice." Art. 64.03(a)(2).

Invoking Article 64, Skinner twice moved in state court, first in 2001 and again in 2007, for DNA testing of yet untested biological evidence. See *supra*, at 527, n. 3, 179 L. Ed. 2d, at

---

**2.** After Skinner's conviction, the State performed DNA tests on certain additional materials, but Skinner took no part in the selection of those materials or their testing. Skinner maintains that these *ex parte* tests were inconclusive. See Complaint ¶19, App. 12 (this "testing raised more questions than it answered"). But see *Skinner* v. *State*, 122 S.W.3d 808, 811 (Tex. Crim. App. 2003) (some findings were "inculpatory").

**3.** Skinner's trial counsel, although aware that biological evidence remained untested, did not request further testing. Postconviction, Skinner sought DNA testing of vaginal swabs and fingernail clippings taken from Busby, blood and hairs on a jacket found next to Busby's body, and biological material on knives and a dish towel recovered at the crime scene. Complaint ¶22, App. 14–15.

240. Both motions were denied. Affirming the denial of Skinner's first motion, the CCA held that he had failed to demonstrate a "reasonable probability ... that he would not have been . . . convicted if the DNA test results were exculpatory." *Skinner* v. *State*, 122 S.W.3d, at 813.

Skinner's second motion was bolstered by discovery he had obtained in the interim.[4] The CCA again affirmed the denial of relief under Article 64, this time on the ground that Skinner failed to meet the "no fault" requirement. See *Skinner* v. *State*, 293 S.W.3d 196, 200 (2009).[5] During postconviction proceedings, the CCA noted, trial counsel testified that he had not "ask[ed] for testing because he was afraid the

[562 U.S. 529]

DNA would turn out to be [Skinner's]." *Id.*, at 202. That decision, the CCA concluded, constituted "a reasonable trial strategy" that the court had no cause to second-guess. *Id.*, at 209.

Skinner next filed the instant federal action for injunctive relief under § 1983, naming as defendant respondent Lynn Switzer, the District Attorney whose office prosecuted Skinner and has custody of the evidence Skinner would like to have DNA tested. Skinner's federal-court complaint alleged that Texas violated his Fourteenth Amendment right to due process by refusing to provide for the DNA testing he requested. Complaint

¶33, App. 20–21. The Magistrate Judge recommended dismissal of the complaint for failure to state a claim upon which relief can be granted. App. 24–41. Under the governing Circuit precedent, *Kutzner* v. *Montgomery County*, 303 F.3d 339, the Magistrate Judge observed, postconviction requests for DNA evidence are cognizable only in habeas corpus, not under § 1983. App. 39. Adopting the Magistrate Judge's recommendation, the District Court dismissed Skinner's suit. *Id.*, at 44–45.

On appeal, the United States Court of Appeals for the Fifth Circuit affirmed, 363 Fed. Appx. 302 (2010) *(per curiam),* reiterating that "an action by a prisoner for post-conviction DNA testing is not cognizable under § 1983 and must instead be brought as a petition for writ of habeas corpus," *id.*, at 303. On Skinner's petition,[6] we granted certiorari, 560 U.S. 924, 130 S. Ct. 3323, 176 L. Ed. 2d 1219 (2010), and now reverse the Fifth Circuit's judgment.

## II

## A

Because this case was resolved on a motion to dismiss for failure to state a claim, the question below was "not whether

[562 U.S. 530]

[Skinner] will ultimately prevail" on his procedural due process claim, see *Scheuer* v. *Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d

---

4. On the basis of discovery in a federal postconviction proceeding, an expert retained by Skinner concluded that Skinner, Busby, and her two sons could be excluded as sources of a hair collected from Busby's right hand after the killings. See Record 190. See also Complaint ¶27, App. 18.

5. The District Attorney, in response to Skinner's second motion, informed the Texas District Court that "[t]o the best of the State's information, knowledge, and belief, the items sought to be tested are still available for testing, the chain of custody is intact, and the items are in a condition to be tested although the State has not sought expert opinion in that regard." Record 202. See also Complaint ¶29, App. 19.

6. The State of Texas scheduled Skinner's execution for March 24, 2010. We granted Skinner's application to stay his execution until further action of this Court. 559 U.S. 1033, 130 S. Ct. 1948, 176 L. Ed. 2d 411 (2010).

90 (1974), but whether his complaint was sufficient to cross the federal court's threshold, see *Swierkiewicz* v. *Sorema N. A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Skinner's complaint is not a model of the careful drafter's art, but ▮ under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument. See 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219, pp. 277–278 (3d ed. 2004 and Supp. 2010).

Skinner stated his due process claim in a paragraph alleging that the State's refusal "to release the biological evidence for testing . . . has deprived [him] of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence . . . ." Complaint ¶33, App. 20–21. As earlier recounted, see *supra*, at 528–529, 179 L. Ed. 2d, at 240-241, Skinner had twice requested and failed to obtain DNA testing under the only state-law procedure then available to him. See Complaint ¶¶22–31, App. 14–20.[7] At oral argument in this Court, Skinner's counsel clarified the gist of Skinner's due process claim: He does not challenge the prosecutor's conduct or the decisions reached by the CCA in applying Article 64 to his motions; instead, he challenges, as denying him procedural due process, Texas' postconviction DNA statute "as construed" by the Texas courts. Tr. of Oral Arg. 56. See also *id.*, at 52–53 (Texas courts, Skinner's counsel argued, have "construed the statute to completely foreclose any prisoner who could have sought DNA testing prior to trial[,] but did not[,] from seeking testing" postconviction).[8]

**[562 U.S. 531]**

The merits of Skinner's federal-court complaint assailing the Texas statute as authoritatively construed, and particularly the vitality of his claim in light of *Osborne*, see *supra*, at 525, 179 L. Ed. 2d, at 239—unaddressed by the District Court or the Fifth Circuit—are not ripe for review. We take up here only the questions whether there is federal-court subject-matter jurisdiction over Skinner's complaint, and whether the claim he presses is cognizable under § 1983.

**B**

Respondent Switzer asserts that Skinner's challenge is "[j]urisdictionally [b]arred" by what has come to be known as the *Rooker-Feldman* doctrine. Brief for Respondent 48–49 (boldface deleted). In line with the courts below, we conclude that *Rooker-Feldman* does not bar Skinner's suit.

As we explained in *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), the *Rooker-*

---

**7.** He also persistently sought the State's voluntary testing of the materials he identified. See Complaint ¶31, App. 20.

**8.** Unlike the respondent in *District Attorney's Office for Third Judicial Dist.* v. *Osborne*, 557 U.S. 52, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (2009), who "attempt[ed] to sidestep state process through . . . a federal lawsuit," *id.*, at 71, 129 S. Ct. 2308, 174 L. Ed. 2d 38, Skinner first resorted to state court, see *supra*, at 528–529, 179 L. Ed. 2d, at 240-241. In this respect, Skinner is better positioned to urge in federal court "the inadequacy of the state-law procedures available to him in state postconviction relief." *Osborne*, 557 U.S., at 71, 129 S. Ct. 2308, 174 L. Ed. 2d 38.

*Feldman* doctrine has been applied by this Court only twice, *i.e.*, only in the two cases from which the doctrine takes its name: first, *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), then 60 years later, *District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). Both cases fit this pattern: The losing party in state court[9] filed suit in a U. S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment. Alleging federal-question jurisdiction, the plaintiffs in *Rooker* and *Feldman* asked the District Court to overturn the injurious state-court judgment. We held, in both cases, that the ■ District Courts lacked subject-matter jurisdiction over such

[562 U.S. 532]

claims, for 28 U.S.C. § 1257 "vests authority to review a state court's judgment solely in this Court." See *Exxon*, 544 U.S., at 292, 125 S. Ct. 1517, 161 L. Ed. 2d 454.

We observed in *Exxon* that the *Rooker-Feldman* doctrine had been construed by some federal courts "to extend far beyond the contours of the *Rooker* and *Feldman* cases." 544 U.S., at 283, 125 S. Ct. 1517, 161 L. Ed. 2d 454. Emphasizing "the narrow ground" occupied by the doctrine, *id.*, at 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454, we clarified in *Exxon* that ■ *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers . . . inviting district

court review and rejection of [the state court's] judgments," 544 U.S., at 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454.

Skinner's litigation, in light of *Exxon*, encounters no *Rooker-Feldman* shoal. ■ "If a federal plaintiff 'present[s] [an] independent claim,' " it is not an impediment to the exercise of federal jurisdiction that the "same or a related question" was earlier aired between the parties in state court. 544 U.S., at 292–293, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (quoting *GASH Assocs.* v. *Rosemont*, 995 F.2d 726, 728 (CA7 1993); first alteration in original); see *In re Smith*, 349 Fed. Appx. 12, 18 (CA6 2009) (Sutton, J., concurring in part and dissenting in part) (a defendant's federal challenge to the adequacy of state-law procedures for postconviction DNA testing is not within the "limited grasp" of *Rooker-Feldman*).

As earlier noted, see *supra*, at 530, 179 L. Ed. 2d, at 242, Skinner does not challenge the adverse CCA decisions themselves; instead, he targets as unconstitutional the Texas statute they authoritatively construed. As the Court explained in *Feldman*, 460 U.S., at 487, 103 S. Ct. 1303, 75 L. Ed. 2d 206, and reiterated in *Exxon*, 544 U.S., at 286, 125 S. Ct. 1517, 161 L. Ed. 2d 454, ■ a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action.[10] Skinner's federal case falls

[562 U.S. 533]

within the latter category. There was, therefore, no

---

**9.** The judgment assailed in *Feldman* was rendered by the District of Columbia Court of Appeals, equivalent for this purpose to a State's highest court.

**10.** The Court further observed in *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U.S. 280, 292–293, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), that "[w]hen there is parallel state and federal litigation," state preclusion law may become decisive, but "[p]reclusion . . . is not a jurisdictional matter."

lack of subject-matter jurisdiction over Skinner's federal suit.[11]

## C

When may a state prisoner, complaining of unconstitutional state action, pursue a civil rights claim under § 1983, and when is habeas corpus the prisoner's sole remedy? This Court has several times considered that question. Pathmarking here is *Heck* v. *Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The plaintiff in that litigation was a state prisoner serving time for manslaughter. He brought a § 1983 action for damages, alleging that he had been unlawfully investigated, arrested, tried, and convicted. Although the complaint in *Heck* sought monetary damages only, not release from confinement, we ruled that the plaintiff could not proceed under § 1983. Any award in his favor, we observed, would "necessarily imply" the invalidity of his conviction. See *id.*, at 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383. ■ When "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the Court held, § 1983 is not an available remedy. *Ibid.* "But if . . . the plaintiff's action, even if successful, will *not* demonstrate the invalidity of [his conviction or sentence], the [§ 1983] action should be allowed to proceed . . . ." *Ibid.*

We summarized the relevant case law most recently in *Wilkinson* v. *Dotson*, 544 U.S. 74, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005). That case in-volved prisoners who challenged the constitutionality of administrative decisions denying them parole eligibility. They could proceed under § 1983, the Court held, for they sought no "injunction ordering . . . immediate or speedier release into the community," *id.*, at 82, 125 S. Ct. 1242, 161 L. Ed. 2d 253, and "a favorable judgment

**[562 U.S. 534]**

[would] not 'necessarily imply the invalidity of [their] conviction[s] or sentence[s],' " *ibid.* (quoting *Heck*, 512 U.S., at 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383; first alteration added).

Measured against our prior holdings, Skinner has properly invoked § 1983. Success in his suit for DNA testing would not "necessarily imply" the invalidity of his conviction. While test results might prove exculpatory, that outcome is hardly inevitable; as earlier observed, see *supra*, at 525, 179 L. Ed. 2d, at 239, results might prove inconclusive or they might further incriminate Skinner. See *Nelson* v. *Campbell*, 541 U.S. 637, 647, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.' ").[12]

Respondent Switzer nevertheless argues, in line with Fifth Circuit precedent, see *Kutzner*, 303 F.3d, at 341, that Skinner's request for DNA testing must be pursued, if at all, in an application for habeas corpus, not in a § 1983 action. The dissent echoes Switzer's argument. See *post*, at 539, 179 L. Ed. 2d, at 247–248. Although Skin-

---

**11.** Switzer asserts that Skinner could have raised his federal claim in the Article 64 proceeding. See Tr. of Oral Arg. 48. Even if that were so, "*Rooker-Feldman* is not simply preclusion by another name," *Lance* v. *Dennis*, 546 U.S. 459, 466, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006) *(per curiam)*, and questions of preclusion unresolved below are "best left for full airing and decision on remand," *id.*, at 467, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (Ginsburg, J., concurring).

**12.** The dissent would muddle the clear line *Heck* and *Dotson* drew, and instead would instruct district courts to resort to "first principles" each time a state prisoner files a § 1983 claim in federal court. *Post*, at 538, 543, 179 L. Ed. 2d, at 247, 250.

ner's *immediate* plea is simply for an order requiring DNA testing, his *ultimate* aim, Switzer urges, is to use the test results as a platform for attacking his conviction. It suffices to point out that Switzer has found no case, nor has the dissent, in which the Court has recognized habeas as the sole remedy, or even an available one, where the relief sought would "neither terminat[e] custody, accelerat[e] the future date of release from custody, nor reduc[e] the level of custody." *Dotson*, 544 U.S., at 86, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (Scalia, J., concurring).

Respondent Switzer and her *amici* forecast that a "vast expansion of federal jurisdiction . . . would ensue" were we to hold that Skinner's complaint can be initiated under § 1983. See Brief for National District Attorneys Association as *Amicus Curiae* 8. In particular, they predict a proliferation of federal civil actions "seeking postconviction discovery of evidence [and] other relief inescapably associated

[562 U.S. 535]

with the central questions of guilt or punishment." *Id.*, at 6. These fears, shared by the dissent, *post*, at 542, 179 L. Ed. 2d, at 249–250, are unwarranted.[13]

In the Circuits that currently allow § 1983 claims for DNA testing, see *supra*, at 524, 179 L. Ed. 2d, at 238, no evidence tendered by Switzer shows any litigation flood or even rainfall.

The projected toll on federal courts is all the more implausible regarding DNA testing claims, for *Osborne* has rejected substantive due process as a basis for such claims. See *supra*, at 525, 179 L. Ed. 2d, at 239.

More generally, in the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321–66, Congress has placed a series of controls on prisoner suits, constraints designed to prevent sportive filings in federal court. See, *e.g.*, PLRA § 803(d) (adding 42 U.S.C. § 1997e to create new procedures and penalties for prisoner lawsuits under § 1983); PLRA § 804(a)(3) (adding 28 U.S.C. § 1915(b)(1) to require any prisoner proceeding *in forma pauperis* to pay the full filing fee out of a percentage of his prison trust account); PLRA § 804(c)(3) (adding 28 U.S.C. § 1915(f) to require prisoners to pay the full amount of any cost assessed against them out of their prison trust account); PLRA § 804(d) (adding 28 U.S.C. § 1915(g) to revoke, with limited exception, *in forma pauperis* privileges for any prisoner who has filed three or more

[562 U.S. 536]

lawsuits that fail to state a claim, or are malicious or frivolous). See also *Crawford-El* v. *Britton*, 523 U.S. 574, 596–597, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) (PLRA aims to "discourage prisoners from filing claims that are unlikely to succeed," and statistics suggest that the Act is "having its intended effect").

---

**13.** Unlike the parole determinations at issue in *Wilkinson* v. *Dotson*, 544 U.S. 74, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005), Switzer urges, claims like Skinner's require inquiry into the State's proof at trial and therefore lie at "the core of the criminal proceeding itself." Tr. of Oral Arg. 41; see *id.*, at 33–34. *Dotson* declared, however, in no uncertain terms, that when a prisoner's claim would not "necessarily spell speedier release," that claim does not lie at "the core of habeas corpus," and may be brought, if at all, under § 1983. 544 U.S., at 82, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (majority opinion) (internal quotation marks omitted); see *id.*, at 85–86, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (Scalia, J., concurring). Whatever might be said of Switzer's argument were we to recast our doctrine, Switzer's position cannot be reconciled with the line our precedent currently draws. Nor can the dissent's advocacy of a "retur[n] to first principles." *Post*, at 543, 179 L. Ed. 2d, at 250. Given the importance of providing clear guidance to the lower courts, "we [again] see no reason for moving the line [our] cases draw." *Dotson*, 544 U.S., at 84, 125 S. Ct. 1242, 161 L. Ed. 2d 253.

Nor do we see any cause for concern that today's ruling will spill over to claims relying on *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); indeed, Switzer makes no such assertion. *Brady* announced a constitutional requirement addressed first and foremost to the prosecution's conduct pretrial. *Brady* proscribes withholding evidence "favorable to an accused" and "material to [his] guilt or to punishment." *Cone* v. *Bell*, 556 U.S. 449, 451, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009). To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching" (2) the State suppressed the evidence, "either willfully or inadvertently" and (3) "prejudice . . . ensued." *Strickler* v. *Greene*, 527 U.S. 263, 281–282, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999); see *Banks* v. *Dretke*, 540 U.S. 668, 691, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004).

Unlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a *Brady* claim, when successful postconviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment. See *Strickler*, 527 U.S., at 296, 119 S. Ct. 1936, 144 L. Ed. 2d 286. And parties asserting *Brady* violations postconviction generally do seek a judgment qualifying them for "immediate or speedier release" from imprisonment. See *Dotson*, 544 U.S.,

at 82, 125 S. Ct. 1242, 161 L. Ed. 2d 253. Accordingly, *Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983. See *Heck*, 512 U.S., at 479, 490, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (claim that prosecutors and an investigator had " 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence' " cannot be maintained under § 1983); *Amaker* v.

**[562 U.S. 537]**

*Weiner*, 179 F.3d 48, 51 (CA2 1999) ("claim [that] sounds under *Brady* v. *Maryland* . . . does indeed call into question the validity of [the] conviction"); *Beck* v. *Muskogee Police Dept.*, 195 F.3d 553, 560 (CA10 1999) (same).

## III

Finally, Switzer presents several reasons why Skinner's complaint should fail for lack of merit. Those arguments, unaddressed by the courts below, are ripe for consideration on remand. "[M]indful that we are a court of review, not of first view," *Cutter* v. *Wilkinson*, 544 U.S. 709, 718, n. 7, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005), we confine this opinion to the matter on which we granted certiorari and express no opinion on the ultimate disposition of Skinner's federal action.

\* \* \*

For the reasons stated, the judgment of the Court of Appeals for the Fifth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

**SEPARATE OPINION**

Justice **Thomas**, with whom Justice **Kennedy** and Justice **Alito** join, dissenting.

The Court holds that Skinner may bring under 42 U.S.C. § 1983 his "procedural due process" claim challeng-

ing "Texas' postconviction DNA stat-
ute." *Ante*, at 530, 179 L. Ed. 2d, at
242. I disagree.[1] I accept the majori-
ty's characterization of the issue here
as

**[562 U.S. 538]**

the question left open in *District
Attorney's Office for Third Judicial
Dist.* v. *Osborne,* 557 U.S. 52, 129 S.
Ct. 2308, 174 L. Ed. 2d 38 (2009),
*ante*, at 524, 179 L. Ed. 2d, at 238,
where a prisoner challenged the con-
stitutional adequacy of the access to
DNA evidence provided by Alaska's
"general postconviction relief stat-
ute," 557 U.S., at 64, 129 S. Ct. 2308,
174 L. Ed. 2d 38. Like Osborne, Skin-
ner seeks to challenge state collateral
review procedures.[2] I would now hold
that these claims are not cognizable
under § 1983.

I

The Court has recognized that
§ 1983 does not reach to the full ex-
tent of its "broad language." *Preiser* v.
*Rodriguez*, 411 U.S. 475, 489, 93 S.
Ct. 1827, 36 L. Ed. 2d 439 (1973); see,
*e.g., Heck* v. *Humphrey*, 512 U.S. 477,
485, 114 S. Ct. 2364, 129 L. Ed. 2d 383
(1994) (§ 1983 should not "expand op-

portunities for collateral attack"). But
this Court has never purported to
fully circumscribe the boundaries of
§ 1983. Cf. *id.*, at 482, 114 S. Ct. 2364,
129 L. Ed. 2d 383. Rather, we have
evaluated each claim as it has come
before us, reasoning from first prin-
ciples and our prior decisions.

In *Preiser* v. *Rodriguez*, the Court
began with the undisputed proposi-
tion that a state prisoner may not use
§ 1983 to

**[562 U.S. 539]**

"challeng[e] his underlying
conviction and sentence on federal
constitutional grounds." 411 U.S., at
489, 93 S. Ct. 1827, 36 L. Ed. 2d 439.
This included attacks on the trial pro-
cedures. See *id.*, at 486, 93 S. Ct.
1827, 36 L. Ed. 2d 439 ("den[ial] [of]
constitutional rights at trial"). From
there, the Court reasoned that "imme-
diate release from [physical] confine-
ment or the shortening of its dura-
tion" also cannot be sought under
§ 1983. *Id.*, at 489, 93 S. Ct. 1827, 36
L. Ed. 2d 439; see also *Wolff* v. *McDon-
nell*, 418 U.S. 539, 94 S. Ct. 2963, 41
L. Ed. 2d 935 (1974) (refusing to allow
a § 1983 suit for restoration of good-
time credits); *Edwards* v. *Balisok*, 520

---

**1.** I adopt the majority's view that Skinner has alleged a violation of procedural due process
despite the fact that his complaint is more naturally read as alleging a violation of *substantive* due
process. I also ignore the questionable premise that the requested relief—DNA testing—would be
available in a procedural due process challenge. Compare *Wilkinson* v. *Dotson*, 544 U.S. 74, 77, 125
S. Ct. 1242, 161 L. Ed. 2d 253 (2005) (seeking "a new parole hearing conducted under
constitutionally proper procedures"), with *Osborne*, 557 U.S., at 78, n. 1, 129 S. Ct. 2308, 174 L. Ed.
2d 38 (Alito, J., concurring) (distinguishing *Dotson* because Osborne sought " 'exculpatory'
evidence").

**2.** Skinner challenges Texas' Article 64, Tex. Code Crim. Proc. Ann., Art. 64.01 *et seq.* (Vernon
2006 and Supp. 2010), which provides for postconviction discovery of DNA evidence that can then
be used in a state habeas proceeding to challenge the validity of a conviction. See *Ard* v. *State*, 191
S.W.3d 342, 344 (Tex. App. 2006). Article 64 does not itself "provide a vehicle for obtaining relief,"
*Ex parte Tuley*, 109 S.W.3d 388, 391 (Tex. Crim. App. 2002), but rather is by design and by nature
part of Texas' collateral review procedures. See Reply Brief for Petitioner 8 ("Because [Article 64]
does not give the convicting court authority to overturn a conviction, the prisoner still must bring
a habeas proceeding to challenge the conviction").

Although Article 64 is, for the purposes of Skinner's due process challenge, part of the state
collateral review process, I do not suggest that a motion under Article 64 is an "application for . . .
collateral review" under 28 U.S.C. § 2244(d)(2). See *Wall* v. *Kholi*, *post*, at 556, n. 4, 131 S. Ct. 1278,
179 L. Ed. 2d 252 (noting that an application for review must "provide a state court with authority
to order relief from a judgment"). Texas has divided postconviction discovery of DNA evidence and
the application for state habeas into separate proceedings, but both remain parts of the State's
collateral review process.

U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997) (refusing to allow a § 1983 procedural challenge to the process used to revoke good-time credits). Then, in *Heck* v. *Humphrey*, we addressed § 1983 actions seeking damages. 512 U.S., at 483, 114 S. Ct. 2364, 129 L. Ed. 2d 383. Determining that such actions were not covered by *Preiser*, we returned to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," 512 U.S., at 486, 114 S. Ct. 2364, 129 L. Ed. 2d 383, and concluded that a complaint must be dismissed where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," *id.*, at 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383. Most recently, in *Wilkinson* v. *Dotson*, 544 U.S. 74, 82, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005), we applied the principles from these prior decisions and found cognizable under § 1983 a claim that sought to "render invalid the state procedures used to deny parole eligibility . . . and parole suitability."

## II

We have not previously addressed whether due process challenges to state collateral review procedures may be brought under § 1983, and I would hold that they may not. Challenges to all state procedures for reviewing the validity of a conviction should be treated the same as challenges to state trial procedures, which we have already recognized may not be brought under § 1983. Moreover, allowing such challenges under § 1983 would undermine Congress' strict limitations on federal review of state habeas decisions. If cognizable at all, Skinner's claim sounds in habeas corpus.

[562 U.S. 540]

First, for the purposes of the Due Process Clause, the process of law for the deprivation of liberty comprises all procedures—including collateral review procedures—that establish and review the validity of a conviction. This has long been recognized for direct appellate review:

"And while the Fourteenth Amendment does not require that a State shall provide for an appellate review in criminal cases, it is perfectly obvious that where such an appeal is provided for, and the prisoner has had the benefit of it, the proceedings in the appellate tribunal are to be regarded as part of the process of law under which he is held in custody by the State, and to be considered in determining any question of alleged deprivation of his life or liberty contrary to the Fourteenth Amendment." *Frank* v. *Mangum*, 237 U.S. 309, 327, 35 S. Ct. 582, 59 L. Ed. 969 (1915) (citations omitted).

Similarly, although a State is not required to provide procedures for post-conviction review, it seems clear that when state collateral review procedures are provided for, they too are part of the "process of law under which [a prisoner] is held in custody by the State." *Ibid.* As this Court has explained, when considering whether the State has provided all the process that is due in depriving an individual of life, liberty, or property, we must look at both pre- and post-deprivation process. See *Cleveland Bd. of Ed.* v. *Loudermill*, 470 U.S. 532, 547, n. 12, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures"); see also *National Private Truck Council, Inc.* v. *Oklahoma Tax Comm'n*, 515 U.S. 582, 587, 115 S. Ct. 2351, 132 L. Ed. 2d 509 (1995);

*Mathews* v. *Eldridge*, 424 U.S. 319, 349, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). There is no principled reason this Court should refuse to allow § 1983 suits to challenge part of this process—the trial proceedings—but bless the use of § 1983 to challenge other parts.

[562 U.S. 541]

Collateral review procedures are, of course, "not part of the criminal proceeding itself." *Pennsylvania* v. *Finley*, 481 U.S. 551, 557, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987). But like trial and direct appellate procedures, they concern the validity of the conviction. Trial procedures are used to initially convict a prisoner; appellate procedures review the validity of that conviction before it becomes final; and collateral review procedures permit challenge to the conviction after it is final. For purposes of deciding which claims fall within the bounds of § 1983, I think it makes sense to treat similarly all constitutional challenges to procedures concerning the validity of a conviction. See *Heck, supra,* at 491, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (Thomas, J., concurring) ("[I]t is proper for the Court to devise limitations aimed at ameliorating the conflict [between habeas and § 1983], provided that it does so in a principled fashion").

Second, "principles of federalism and comity [are] at stake" when federal courts review state collateral review procedures, just as when they review state trial procedures. *Osborne,* 557 U.S., at 76, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (Alito, J., concurring). An attack in federal court on any "state judicial action" concerning a state conviction must proceed with "proper respect for state functions," because the federal courts are being asked to "tr[y] the regularity of proceedings had in courts of coordinate jurisdiction." *Preiser,* 411 U.S., at 491, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (internal quotation marks and emphasis omitted).

Because of these concerns for federal-state comity, Congress has strictly limited the procedures for federal habeas challenges to state convictions and state habeas decisions. Congress requires that before a state prisoner may seek relief in federal court, he must "exhaus[t] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). And state habeas determinations receive significant deference in subsequent federal habeas proceedings. § 2254(d). These requirements ensure that the state courts have the first opportunity to correct any error with a state conviction

[562 U.S. 542]

and that their rulings receive due respect in subsequent federal challenges.

By bringing a procedural challenge under § 1983, Skinner undermines these restrictions. For example, Skinner has never presented his current challenge to Texas' procedures for postconviction relief to the Texas courts. Allowing Skinner to artfully plead an attack on state habeas *procedures* instead of an attack on state habeas *results* undercuts the restrictions Congress and this Court have placed on federal review of state convictions. See *Osborne, supra,* at 76–79, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (Alito, J., concurring). To allege that the Texas courts erred in denying him relief on collateral review, Skinner could only file a federal habeas petition, with its accompanying procedural restrictions and deferential review. But a successful challenge to Texas' collateral review procedures

under § 1983 would impeach the result of collateral review without complying with any of the restrictions for relief in federal habeas.

The majority contends that its decision will not "spill over to claims relying on *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)." *Ante*, at 536, 179 L. Ed. 2d, at 246; but cf. *Osborne*, *supra*, at 77–78, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (Alito, J., concurring). In truth, the majority provides a roadmap for any unsuccessful state habeas petitioner to relitigate his claim under § 1983: After state habeas is denied, file a § 1983 suit challenging the state habeas process rather than the result. What prisoner would not avail himself of this additional bite at the apple?[3]

[562 U.S. 543]

### III

The majority relies on *Dotson* to reach its conclusion. In that case, the plaintiffs alleged due process violations in state parole adjudications and sought injunctive relief and "a new parole hearing conducted under constitutionally proper procedures." 544 U.S., at 77, 125 S. Ct. 1242, 161 L. Ed. 2d 253. We found the claims cognizable under § 1983.

*Dotson* does not control this case. Unlike state collateral review, parole does not evaluate the validity of the underlying state conviction or sentence. Collateral review permits prisoners to "attack their final convictions." *Osborne*, *supra*, at 76, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (Alito, J., concurring). In contrast, parole may provide release, but whether or not a prisoner is paroled in no way relates to the validity of the underlying conviction or sentence. Whatever the correctness of *Dotson*, parole procedures do not review the validity of a conviction or sentence. For that reason, permitting review of parole procedures does not similarly risk transforming § 1983 into a vehicle for "challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S., at 486, 114 S. Ct. 2364, 129 L. Ed. 2d 383.

Contrary to the majority's contention, *Dotson* did not reduce the question whether a claim is cognizable under § 1983 to a single inquiry into whether the prisoner's claim would "necessarily spell speedier release." See *ante*, at 533–535, 179 L. Ed. 2d, at 244–245, and n. 13 (internal quotation marks omitted).[4] As we recognized in *Heck*, evaluating the boundaries of § 1983 is not a narrow, mechanical inquiry. Even when the relief sought was not "speedier release," we inquired further and returned to first principles to determine that the chal-

---

**3.** Nor is there any reason to believe that the Court's holding will be cabined to collateral review procedures. The Court does not discuss whether a State's direct review process may be subject to challenge under § 1983, but it suggests no principled distinction between direct and collateral review. This risks transforming § 1983 into a vehicle for direct criminal appeals. Cf. *Heck* v. *Humphrey*, 512 U.S. 477, 486, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). Just as any unsuccessful state habeas petitioner will now resort to § 1983 and challenge state collateral review procedures, so, too, will unsuccessful appellants turn to § 1983 to challenge the state appellate procedures.

**4.** Because parole procedures are unrelated to the validity of a conviction, a "necessarily spell speedier release" test may sufficiently summarize the analysis of § 1983 challenges to parole procedures. But "necessarily spell speedier release" cannot be the only limit when a prisoner challenges procedures used to review the validity of the underlying conviction.

lenge in that case

[562 U.S. 544]

was not cognizable under § 1983.[5] See 512 U.S., at 486, 114 S. Ct. 2364, 129 L. Ed. 2d 383. *Dotson* does not suggest that the *Heck* approach, which I would continue to follow here, was incorrect.

\* \* \*

This Court has struggled to limit § 1983 and prevent it from intruding into the boundaries of habeas corpus. In crafting these limits, we have recognized that suits seeking "immediate or speedier release" from confinement fall outside its scope. *Dotson, supra,* at 82, 125 S. Ct. 1242, 161 L. Ed. 2d 253. We found another limit when faced with a civil action in which "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck, supra,* at 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383. This case calls for yet another: due process challenges to state procedures used to review the validity of a conviction or sentence. Under that rule, Skinner's claim is not cognizable under § 1983, and the judgment of the Court of Appeals should be affirmed. I respectfully dissent.

---

**5.** As respondent argued, our existing formulations are not "the end of the test." Tr. of Oral Arg. 32–33.