In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1420

ALEXANDER MILCHTEIN and ESTER RIVA MILCHTEIN,

*Plaintiffs-Appellants*,

*v.*

JOHN T. CHISHOLM, District Attorney of Milwaukee County, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 13-C-0940 — **C.N. Clevert, Jr.**, *Judge*.

ARGUED NOVEMBER 30, 2017 — DECIDED JANUARY 29, 2018

Before EASTERBROOK and MANION, *Circuit Judges*, and JOHN Z. LEE, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. Alexander and Ester Riva Milchtein have 15 children. The two eldest refused to return home in 2011 and 2012 and were placed in foster care by orders of Wisconsin's court system. In this federal suit, the

---

[*] Of the Northern District of Illinois, sitting by designation.

Milchteins contend that state officials violated the federal Constitution during proceedings that ended in the foster-care orders. The Milchteins contend that the state either discriminated against or failed to accommodate their views of family organization and management in the Chabad understanding of Orthodox Judaism. (Rabbi Alexander Milchtein tells us that he follows the teachings of the Lubavitcher Rebbe Menachem Mendel Schneerson.) These two children now are adults, however, and all state proceedings with respect to them are closed. For that reason the district court dismissed the Milchteins' suit as moot. 2017 U.S. Dist. LEXIS 13160 (E.D. Wis. Jan. 31, 2017).

The Milchteins contend that it is not moot, because (a) the district court could have entered a declaratory judgment about the propriety of Wisconsin's actions, and (b) they still have 12 minor children, any of whom might run away and precipitate the same sort of controversy.

The district judge addressed the first of these themes by invoking the *Rooker-Feldman* doctrine. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Among federal courts, only the Supreme Court of the United States has statutory authority to review the decisions of state courts in civil cases. 28 U.S.C. §1257. The *Rooker-Feldman* doctrine insists that other federal courts not usurp that authority. Because the proceedings with respect to the Milchteins' two eldest children are over, the state courts' decisions are not subject to review *anywhere*. The Milchteins did not ask the district judge, and do not ask us, to alter or annul any decision by a state judge. Nonetheless, the district judge deemed the Milchteins' arguments to be "inextricably intertwined" with

the state litigation and thought that this brought the *Rooker-Feldman* doctrine into play.

It isn't hard to find decisions in this circuit, and elsewhere, that extend the *Rooker-Feldman* doctrine to any arguments that were, or could have been, presented in the state suit, even though the federal plaintiffs do not want the state judgment to be changed, by stating that the arguments are "inextricably intertwined" with the judgment. See, e.g., *Remer v. Burlington Area School District*, 205 F.3d 990, 996 (7th Cir. 2000). The phrase "inextricably intertwined" originated in *Feldman* itself, though it was put to different use. 460 U.S. at 482 n.16, 486–87. More recently, however, the Supreme Court has insisted that the jurisdictional *Rooker-Feldman* doctrine be distinguished from principles of issue and claim preclusion. See, e.g., *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005); *Lance v. Dennis*, 546 U.S. 459 (2006); *Skinner v. Switzer*, 562 U.S. 521, 531–33 (2011).

If a contention in federal litigation is intertwined with the state litigation only in the sense that it entails a factual or legal contention that was, or could have been, presented to the state judge, then the connection between the state and federal cases concerns the rules of preclusion, which are not jurisdictional and are outside the scope of the *Rooker-Feldman* doctrine. Because the phrase "inextricably intertwined" has the potential to blur this boundary, it should not be used as a ground of decision. See *Richardson v. The Koch Law Firm, P.C.*, 768 F.3d 732 (7th Cir. 2014). The vital question, the Justices stated in *Exxon Mobil*, *Lance*, and *Skinner*, is whether the federal plaintiff seeks the alteration of a state court's judgment. The Milchteins do not, so the *Rooker-Feldman* doctrine does not block this suit.

What does block it is the requirement of justiciability. The Milchteins want a federal judge to say where a state judge erred but not do anything about the errors. That is a naked request for an advisory opinion. The state cases are closed. A federal judge's statement about how the state judge should have handled old litigation could not affect anyone's rights—that's why the *Rooker-Feldman* doctrine is irrelevant—and precisely because it could not affect anyone's rights it also would be advisory. Federal judges don't tell state judges how they should have ruled in closed cases.

This brings us to the Milchteins' second theme. The opinion they seek would not be advisory, they contend, because it could affect future litigation involving their other children. They observe that a dispute is not moot if it is capable of repetition between the same parties but evades review because it is too short-lived for the federal judiciary to reach a decision while it is ongoing. See, e.g., *Weinstein v. Bradford*, 423 U.S. 147 (1975). The parties debate whether Wisconsin's child-custody proceedings last long enough, before a child reaches age 18, to permit federal litigation while they last. The district judge thought that they do, 2017 U.S. Dist. LEXIS 13160 at *37, but added that the absence of new child-custody proceedings during the years after the Milchteins' second-eldest child turned 18 shows that repetition of the constitutional dispute is unlikely.

The Milchteins reply that, after the district court ruled, the dispute has come back to life concerning another child. We have a bit more to say about that contention later. For now it is enough to conclude that the possibility of new or ongoing proceedings concerning the Milchteins' other children could avoid mootness (if state proceedings are inher-

ently too short) without authorizing federal litigation. For if Wisconsin again starts judicial proceedings concerning any of the Milchteins' children, the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), would require the federal tribunal to abstain. *Younger* concerned a criminal defendant's attempt to obtain federal intervention in a pending prosecution. It has since been extended to civil litigation brought by the state to vindicate its policies. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–05 (1975); *Trainor v. Hernandez*, 431 U.S. 434 (1977); *Moore v. Sims*, 442 U.S. 415 (1979). That's an apt description of child-welfare and child-custody proceedings. *Moore*, 442 U.S. at 423 (applying *Younger* to state-initiated custody litigation); *Brunken v. Lance*, 807 F.2d 1325, 1330–31 (7th Cir. 1986). *Younger* also has been extended to state administrative proceedings. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986). And we know from *Samuels v. Mackell*, 401 U.S. 66, 69–73 (1971), that *Younger* applies to requests for declaratory judgments as well as to requests for injunctions.

So if a state-initiated proceeding concerning one of the Milchteins' remaining children comes before Wisconsin's child-welfare agency and judiciary, a federal court should abstain and let the Milchteins present their constitutional arguments to the state officials. *Younger* prevents a federal judge from resolving isolated legal issues that might matter to proceedings already before a state agency or judge. See, e.g., *South Bend v. South Bend Common Council*, 865 F.3d 889 (7th Cir. 2017). Principles of comity and federalism permit states to resolve for themselves all legal contentions, including those based on the Constitution. Add to this the principle that federal courts are supposed to leave child-custody disputes to the states, see *Ankenbrandt v. Richards*, 504 U.S.

689 (1992), and we have a set of powerful reasons not to address the sort of arguments the Milchteins seek to present.

*Younger* suggests that abstention may be inappropriate if the very existence of a state proceeding violates the First Amendment. But the Milchteins do not contend that it is *never* permissible for a state to inquire into the welfare of a religious leader's children. They contend only that the state must respect parents' religious beliefs when making decisions about the placement, education, and religious practices of minor children. That sort of argument is one reserved by the *Younger* doctrine to the state judiciary, with review (if appropriate) by the Supreme Court of the United States.

Because the Milchteins' proposed means of rescuing this case from mootness runs smack into *Younger*, we need not decide whether to supplement the record. Defendants oppose the Milchteins' motion, observing that the affidavit was not before the district judge. They add that Rabbi Milchtein's assertion that another minor child is "outside the control of my wife and me" does not say what role, if any, state agencies and courts have played in producing that status. (The affidavit says that "Child Protective Services personnel conducted an interview with myself, my wife, and some of my minor children" but does not assert that state employees have acted in any manner based on what they learned.)

For the reasons we have given, this federal case must end whether or not we grant the Milchteins' motion. As there is no priority among reasons for not deciding the merits, see *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999), details about exactly what is happening

with the Milchteins' additional children do not matter to this suit—though they may matter greatly in state court.

AFFIRMED