**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 26, 2020[*]
Decided March 31, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-3067

| | |
|---|---|
| IREDELL SANDERS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Indiana, |
| | South Bend Division. |
| *v.* | |
| | No. 3:19-CV-276 DRL-MGG |
| INDIANA DEPARTMENT OF CHILD | |
| SERVICES, | Damon R. Leichty, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Iredell Sanders sued the Indiana Department of Child Services under 42 U.S.C. § 1983, alleging that it had interfered with his right to familial integrity, unreasonably investigated him, discriminated against him based on his sex and race, and lied to a state court to keep his children from him. The district court dismissed the case, concluding that Sanders's claims were barred by the Eleventh Amendment. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

According to Sanders's allegations, which we must take as true, *see Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013), the trouble began when the Department received a report about "a naked man chasing a naked girl down the street with a belt." The Department removed Sanders's children from school and questioned them. The report was unfounded, however, so his children returned home.

But the Department, Sanders contends, continued to investigate him without cause. It demanded his children's medical records and other documentation, searched and photographed his home, and interrogated his wife and children. The Department then misrepresented the information that it had gathered to manufacture charges of neglect against Sanders and obtained a court order removing the children from his care.

Although Sanders complied with the Department's requests and procedures so that he could reunite with his children, it thwarted his efforts. He alleges that the Department threatened his wife that "she would never see her children again" if she refused to testify falsely against him to procure a protective order. It also arbitrarily denied his legitimate requests for paperwork related to his children's case. And, at one point, a Department representative made a racially derogatory remark about his children. Then, according to Sanders, when a judge was about to lift the protective order, a Department attorney falsely told the judge that Sanders was accused of child abuse to persuade the judge to continue the protective order. In Sanders's view, the Department's actions were motivated by his sex and race and caused his children to no longer want to see him.

Sanders sued the Department based on these allegations. Although he did not specify the nature of his claims, the district court construed the complaint as alleging that the Department violated his constitutional rights, including his right to raise his children. *See* 42 U.S.C. § 1983; *Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017) (Fourteenth Amendment protects limited right to familial integrity). The court granted the Department's motion to dismiss, concluding that Indiana's sovereign immunity under the Eleventh Amendment barred any claim under § 1983.

On appeal, Sanders asserts that the district court erred in ruling that the Eleventh Amendment immunizes the Department from his lawsuit. He does not dispute the district court's determination that his complaint alleges constitutional violations under § 1983, nor does he deny that the Department is an Indiana state agency. *See Nuñez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016). He insists, however, that the Constitution permits his lawsuit.

We need not reach the constitutional question, though. The Department has a statutory defense: neither a state nor, by extension, a state agency, is a "person" for the purposes of § 1983. *See Will v. Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *see also Kolton v. Frerichs*, 869 F.3d 532, 535 (7th Cir. 2017). Therefore, "consistent with the principle of avoiding unnecessary constitutional decisionmaking," we conclude that Sanders's claims are barred because he is seeking damages ($62 million) against the Department, which is not a suable "person" within the meaning of § 1983. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012).

The Department agrees with the district court's judgment, but it now argues that the district court lacked subject matter jurisdiction over Sanders's claims under the *Rooker-Feldman* doctrine. True, under that doctrine lower federal courts lack jurisdiction over claims seeking to upset state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). But, although Sanders's complaint is not clear, it does not seem that he is strictly challenging an adverse judicial ruling. Like the district court, we read the complaint to allege claims that do not seek "the alteration of a state court's judgment," but instead seek damages for independently unlawful conduct. *See Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018). For example, a claim that the Department manufactured charges against Sanders because of his race and gender would not implicate *Rooker-Feldman*. *See, e.g., id.* at 897 (parents alleging that the state violated the constitution by discriminating against them during proceedings to have their children placed in foster care).

We note in closing that the district court granted the defendants' motion to dismiss and entered final judgment without giving Sanders an opportunity to amend his complaint. The "usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018) (collecting cases); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). In this case, the district court did not find that amendment would be futile (though that conclusion flows logically from its ruling that the Eleventh Amendment barred Sanders's claims against the Department). And the complaint was not hopeless on its face—Sanders could have avoided the statutory and constitutional defenses by naming individual state actors as defendants (if, given the timing, such claims could relate back to the original complaint). But he made clear in his complaint that he intended to sue only the Department, not any individual: "This [case] is against DCS, I will file on the others." And nothing in his appellate brief suggests that he wanted to amend. So, it is

enough for us to remind the district court that, unless it explains why amending would be futile, a plaintiff is normally entitled to at least one opportunity to amend before the entry of a final judgment.

AFFIRMED