**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2022[*]
Decided September 2, 2022

*Before*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 22-1184

| | |
|---|---|
| ALICIA ROYAL, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:18-cv-123-HAB |
| MYIKELL PAYNE, et al., *Defendants-Appellees*. | Holly A. Brady, *Judge*. |

**O R D E R**

The Indiana Department of Child Services removed Alicia Royal's two children from her custody after she was arrested for allegedly fighting her elder, teenage child. The charges eventually were dropped and Royal regained custody of her children. She then sued various DCS employees for impeding her efforts to reunite with her children.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

The case proceeded to summary judgment, at which point the district court concluded that the appellees were entitled to qualified immunity. We affirm.

We construe the facts at summary judgment in the light most favorable to Royal. *See Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). Royal has two children, M.R. and T.L. One evening in late 2017, Royal and M.R. got into an argument about M.R.'s boyfriend, and Royal was arrested for striking M.R. As no other adult was in the home that night, a DCS investigator sought immediate temporary placement for the children. The children asked to stay with their grandmother, but the investigator ignored that request and placed them with Royal's cousin. Because of the arrest and the potential abuse, DCS initiated child-custody proceedings, which resulted in an Indiana trial court ordering that the children remain with the cousin. A week later Indiana dropped the charges against Royal, and the court returned T.L. but not M.R. to Royal. In May 2018, M.R. was placed with her grandmother. After Royal completed court-ordered classes and therapy, she regained custody of M.R.

Royal sued several DCS employees, alleging that they violated her Fourteenth Amendment rights. With the help of court-recruited counsel, Royal argued that DCS interfered with her right to care for her children. She asserted that her children should have been placed in their grandmother's care immediately, that DCS employees ignored her repeated requests to place her children in their grandmother's care, that a DCS employee exaggerated M.R.'s injury, and that Royal was denied several scheduled visits with M.R.

The district court granted the defendants' motion for summary judgment. The court first considered the applicability of the *Rooker-Feldman* doctrine, which bars state-court losers from challenging state-court judgments in the lower federal courts. *See, e.g., Milchtein v. Chisholm*, 880 F.3d 895, 897–98 (7th Cir. 2018). But the court determined that *Rooker-Feldman* did not apply because Royal was not directly challenging the state court's removal order. Nevertheless, the court concluded that the defendants were entitled to qualified immunity because, even accepting Royal's facts as true, the rights she sought to vindicate were not clearly established by precedent.

Royal appeals, but the appellees renew their jurisdictional challenge that *Rooker-Feldman* bars her claims to the extent that she seeks to overturn the Indiana court's ruling. Most of Royal's claims, however, do not seek to alter that ruling. *See Milchtein*, 880 F.3d at 898. She seeks damages for what she regards as the defendants' independently unlawful conduct—their interference with her Fourteenth Amendment rights to care for and control her children (e.g., by initially placing her children with her

cousin; repeatedly ignoring her requests to transfer their care to their grandmother; and impeding her visitation with M.R). Injuries not caused by a custody order do not implicate *Rooker-Feldman. See Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002) (*Rooker-Feldman* not implicated by claim that Illinois Department of Children and Family Services violated parents' Fourteenth Amendment rights when they removed child from their custody). But to the extent Royal's claims target the Indiana court's rulings (e.g., assertions of inaccuracies in the documents relied upon by the Indiana court when deciding to remove custody), *Rooker-Feldman* bars federal review of challenges to a state court's order allegedly effectuated through fraud. *See Bauer v. Koester*, 951 F.3d 863, 866 (7th Cir. 2020).

That leaves us with the district court's ruling that the defendants are entitled to qualified immunity. Royal, however, does not develop any argument to challenge this ruling. *See* FED. R. APP. P. 28(a)(8). When qualified immunity—as here—is raised as a defense, the burden shifts to the plaintiff to show that there was a violation of a "clearly established" right. *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012). A parent has a right to familial relations, but that right is qualified by the State's interest in protecting children. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011). The balance between these interests is "nebulous at best," so most defendants in child-removal cases are entitled to qualified immunity. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1023 (7th Cir. 2000). Royal directs our attention to only one case, *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18 (1981), which addressed the question whether an indigent parent had a constitutional right to counsel in proceedings to terminate parental rights but says nothing about a parent's right to either visit her child or decide who her child should be placed with.

AFFIRMED