In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3776

COMMONWEALTH PLAZA CONDOMINIUM ASSOCIATION,
an Illinois not-for-profit corporation *et al.*,

*Plaintiffs-Appellants,*

*v.*

CITY OF CHICAGO, a municipal corporation,

*Defendant-Appellee,*

and

SAINT JOSEPH HOSPITAL, an Illinois not-for-profit
corporation,

*Intervening Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:11-cv-02923—**Marvin E. Aspen**, *Judge.*

ARGUED JUNE 5, 2012—DECIDED AUGUST 30, 2012

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiffs Commonwealth
Plaza Condominium Association, Suhail al Chalabi,

Virginia M. Harding, and Darren Moss sued the City of Chicago in federal court alleging that an opinion of the Illinois Appellate Court interpreting the Home Rule Provision of the Illinois Constitution in a zoning dispute deprived them of constitutional due process. The district court dismissed the claim as barred by the *Rooker-Feldman* doctrine, under which federal district and circuit courts lack jurisdiction to review decisions of state courts. Plaintiffs appeal, and we affirm the dismissal for lack of jurisdiction.

I. *Background*

In 2004, Resurrection Health Care filed an application to rezone property around Saint Joseph Hospital in Chicago to allow Resurrection to conduct further development of the campus. Plaintiffs own property within 250 feet of the property Resurrection sought to rezone. They attended public hearings about the rezoning and filed objections to it. In 2006, after those hearings were completed, the City Council of Chicago approved the rezoning and amended the Chicago Zoning Ordinance to establish Institutional Planned Development 1019 ("IPD 1019"), which changed the zoning classification of the land Resurrection sought to develop.

Plaintiffs then filed a complaint in state court against the City of Chicago and other defendants claiming that the IPD 1019 ordinance violated plaintiffs' constitutional rights under the due process clauses of the Illinois and U.S. Constitutions because it was inconsistent with provisions of the Chicago Zoning Code. The state trial court

granted summary judgment in favor of the City, finding that even though IPD 1019 was inconsistent with the Chicago Zoning Code, that fact alone did not support an order invalidating IPD 1019. Plaintiffs appealed, and the Illinois Appellate Court issued a published opinion affirming the trial court's decision. The appellate court held: "The IPD ordinance enacted by the city council in this case is not rendered unconstitutional simply because this municipality, a home rule unit, violated its own self-imposed ordinances in enacting the IPD ordinance." *Condominium Ass'n of Commowealth Plaza v. City of Chicago*, 924 N.E.2d 596, 606 (Ill. App. 2010). The Illinois Supreme Court denied plaintiffs' petition for leave to appeal, and plaintiffs' state court action was then dismissed without prejudice with the agreement of the parties.

Having lost in state court, plaintiffs then filed suit in federal court. Count I of the three-count amended complaint alleges:

> It is now binding law in Cook County, Illinois (the jurisdiction of the Illinois Appellate Court, 1st District) that a home rule municipality may violate its own, duly enacted laws in adopting or amending a zoning ordinance. This law deprives all property owners in Cook County, including Plaintiffs, the right to seek or oppose a proposed amendment of existing zoning law affecting their property, of constitutional due process of law.

Am. Compl. ¶ 22. Plaintiffs asked the district court to enter a declaratory judgment ruling that this decision

deprived them of property without constitutional due process. Counts II and III alleged that IPD 1019 violates plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment and is therefore void. Defendants, in turn, moved to dismiss all counts for lack of subject-matter jurisdiction and failure to state a claim on which relief can be granted. The district court dismissed Count I pursuant to the *Rooker-Feldman* doctrine, and Counts II and III as barred by *res judicata*. *Commonwealth Plaza Condo. Ass'n v. City of Chicago*, 2011WL 5830128 (N.D. Ill. Nov. 17, 2011).

II. *Analysis*

Plaintiffs appeal only the dismissal of Count I, arguing that the district court erred in dismissing their claim as barred by *Rooker-Feldman*. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review *de novo* the district court's dismissal of a complaint for lack of subject-matter jurisdiction. *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002).

The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine, which is a jurisdictional limitation, "prevents lower federal courts from reviewing state-court judgments, over which only the United States Supreme Court has federal appellate jurisdiction." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011), citing *Skinner v. Switzer*, 131 S. Ct. 1289 (2011); see

also *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000) ("[N]o matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment."). This narrow doctrine deprives federal district and circuit courts of jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Plaintiffs' complaint alleges: "Plaintiffs have exhausted all state remedies provided by law or equity on the claims asserted below, and thus appeal to this Court for the relief requested." Am. Compl. ¶ 20. Consistent with this assertion, Count I of plaintiffs' Complaint expressly placed before the district court the judgment of the Illinois Appellate Court, alleging injury from this "binding law." Plaintiffs then asked the district court to "declare by judgment that home rule municipalities in [Cook County, Illinois] must comply with their own laws in approving amendment of an existing zoning ordinance, absent specific repeal of those laws that would otherwise prohibit such amendment." Am. Compl. ¶ 23.

The district court correctly found that Count I is barred by the *Rooker-Feldman* doctrine. Plaintiffs did not suffer an out-of-court injury and then fail to obtain relief from

the state court. They allege an injury from the state court judgment rejecting their constitutional challenge and upholding the rezoning. The "binding law" to which plaintiffs' refer as the source of their injury is the Illinois Appellate Court's decision itself. See *Condominium Ass'n of Commonwealth Plaza*, 924 N.E.2d at 606 ("The IPD ordinance enacted by the city council in this case is not rendered unconstitutional simply because this municipality, a home rule unit, violated its own self-imposed ordinances in enacting the IPD ordinance."). Absent that state court ruling, plaintiffs would not have suffered the alleged injury they are asking the federal courts to redress, and that is a clear symptom of the *Rooker-Feldman* bar. See *Holt v. Lake County Bd. of Comm'rs*, 408 F.3d 335, 336-37 (7th Cir. 2005) (dismissing § 1983 civil rights case because injury was caused by the state court judgment).

The more common *Rooker-Feldman* fact pattern involves state court defendants, ordered by the state court to pay money or take some action, who file a federal suit claiming injury from that state court judgment. See, *e.g.*, *Garry v. Geils*, 82 F.3d 1362, 1367 (7th Cir. 1996) ("In *Homola* and *Nesses* we offered the following rough guide to determining whether *Rooker-Feldman* or res judicata should be applied to a federal plaintiff making a claim due to unhappiness with a prior state-court ruling: if the federal plaintiff was the plaintiff in state court, apply res judicata; if the federal plaintiff was the defendant in state court, apply *Rooker-Feldman*."). But these plaintiffs, who were also plaintiffs in state court, have pled that the state court ruling is the source of their

alleged injury. We take them at their word, and that means the district court properly dismissed the claim for lack of jurisdiction.

Plaintiffs attempt to avoid this straightforward application of *Rooker-Feldman* with a creative argument that would, if accepted, leave the *Rooker-Feldman* doctrine in tatters. Plaintiffs build their argument from the Supreme Court's recent decision in *Skinner v. Switzer*, 131 S. Ct. 1289 (2011), where the Court found that Skinner's claim was not barred by *Rooker-Feldman* because he was challenging a Texas statute providing for limited post-conviction DNA testing, rather than the state court decisions to deny him the requested DNA testing. *Id.* at 1298. The Court found: "If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Id.* at 1297 (internal quotation and alteration marks omitted). Thus, while a state court decision is not reviewable by lower federal courts, a statute or rule governing the decision may be challenged in an independent federal action. *Id.* at 1298.

Plaintiffs argue that their challenge is similar to that in *Skinner*: they claim they do not challenge the conclusion of the state courts that IPD 1019 is not void. Rather, as in *Skinner*, they cast Count I as a facial constitutional challenge to a "new rule of law." The new rule of law they identify is that adopted by the Illinois Appellate Court in construing the Illinois Home Rule Provision, which is Article VII, § 6 of the Illinois Constitution, al-

lowing a home rule municipality to enact conflicting legislation. As support for this contention, plaintiffs cite the fact that the Illinois Appellate Court's decision was originally released as an unpublished order but was later released as a precedential opinion for publication. Under Illinois Supreme Court Rule 23, appellate courts can dispose of a case by published opinion only when "the decision establishes a new rule of law or modifies, explains or criticizes an existing rule of law; or the decision resolves, creates, or avoids an apparent conflict of authority within the Appellate Court." Seizing on this "new rule" language and what they characterize as the appellate court's "unprecedented interpretation" of the Home Rule Provision, plaintiffs conclude that the Illinois Appellate Court adopted a "new rule of law."

There are several problems with this argument. In general terms, this argument would effectively undermine the *Rooker-Feldman* doctrine by allowing federal district and circuit courts to review directly the constitutional correctness of state court opinions. More specifically, the Illinois Appellate Court's decision is simply not a "rule" of the type considered in *Skinner*. In *Feldman* itself, the Supreme Court made clear that the only "rules" that may be challenged independently in federal court are those that are "promulgated in a nonjudicial proceeding." *Feldman*, 460 U.S. at 486. The proceeding before the Illinois Appellate Court here was plainly judicial. The Supreme Court has explained the distinction between judicial and legislative proceedings as follows:

A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

*Feldman*, 460 U.S. at 477, quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908). The district court correctly applied this test and found that the Illinois Appellate Court conducted a judicial inquiry. It decided liabilities on present facts — the validity of an existing amendment to the Chicago Zoning Ordinance as challenged by owners of nearby property — and under existing Illinois law.

Plaintiffs argue that the appellate court created a "new rule" because, in their view, the prior Illinois cases cited by the appellate court are distinguishable because they did not involve due process claims. Plaintiffs' disagreement with the Illinois Appellate Court's application of precedent does not make the court's decision a legislative decision. Down that path lies madness. Adopting plaintiffs' argument would mean that nearly every judicial decision could be said to create a "new rule" since no two cases present identical facts or arguments. We reject plaintiffs' argument and agree with the district court that the state appellate court's decision falls squarely within the Supreme Court's description of a judicial action.

As part of their creative effort to avoid *Rooker-Feldman*, plaintiffs also run into another basic require-

ment for federal jurisdiction: an actual case or controversy. U.S. Const. art. III, § 2. Federal courts may not issue advisory opinions. The Supreme Court has explained:

> A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (internal citations omitted); see also *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."), quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

To avoid *Rooker-Feldman*, plaintiffs argue that they do not want the federal courts to reverse the state court decision but instead to consider the abstract question whether the state court's decision is consistent with the U.S. Constitution, without reaching any decision about how that consistency or inconsistency actually

applies to IPD 1019. If the district court issued a declaratory judgment in plaintiffs' favor, that judgment would not provide "specific relief through a decree of a conclusive character." Rather, as plaintiffs admit, "if this Court rules in plaintiffs' favor, plaintiffs can renew their case in state court and defendants would be free to challenge again the Circuit Court's decision that the Chicago City Council had violated its own laws." Thus, the declaratory judgment plaintiffs seek would be merely "an opinion advising what the law would be based upon a hypothetical state of facts," which plaintiffs would then hope to use to renew their case in state court. Such an advisory opinion is beyond the district court's power.

Plaintiffs protest that it is "clear that a state court does not have final authority to interpret the United States Constitution and the rights it provides." That statement is true but does not provide the basis for federal district court jurisdiction in this matter. That's the point of *Rooker-Feldman*: "a decision by a state court, however erroneous, is not itself a violation of the Constitution actionable in federal court*." Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995); see also *Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589, 596 (7th Cir. 1992) ("district courts have no jurisdiction 'over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional'"), quoting *Feldman*, 460 U.S. at 486. Litigants who have exhausted their federal constitutional claims in state court may seek review of the state court decision in the Supreme Court of the United States. 28 U.S.C. § 1257; see also

*Rooker*, 263 U.S. at 415-16; *Remer*, 205 F.3d at 996 ("The *Rooker-Feldman* doctrine precludes federal jurisdiction over these claims because, no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.").

Count I as pled in the complaint is barred by *Rooker-Feldman*, and plaintiffs' attempt to recast Count I as an "independent constitutional challenge" is barred by the "case or controversy" requirement. In the face of those obstacles, plaintiffs pivot again and attempt to tie Count I back to the alleged injury caused by IPD 1019. But linking their federal claim back to that alleged injury cannot save Count I. Plaintiffs directly challenged IPD 1019 in Counts II and III of their complaint, which the district court properly dismissed as barred by *res judicata*, a conclusion that plaintiffs do not challenge on appeal. If Count I were recast as a direct challenge to IPD 1019, it would face the same fate. See *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007) (under Illinois law, *res judicata* applies where the claim involves the same parties as the state court litigation; there is an identity in the causes of action; and there was a final judgment in the state court litigation, although federal courts will make an exception where plaintiff did not have a full and fair opportunity to litigate the claim in state court).

Plaintiffs argue that Count I is not barred by *res judicata* because the Illinois Appellate Court's decision went "far beyond" the issue presented in plaintiffs' state com-

plant. According to plaintiffs, "because the sweeping ruling of the Illinois Appellate Court imposes a continuing deprivation of both plaintiffs' rights and those of other property owners, it would be inequitable to apply preclusion principles here to prevent plaintiffs from obtaining this Court's review . . . ." In oral argument, plaintiffs said they are aware of no state court decision holding that a legislative body is free to violate its own laws. Thus, plaintiffs contend, equitable considerations weigh in favor of not dismissing Count I on *res judicata* grounds.

Plaintiffs' concerns are exaggerated. The state court held only that a conflict between ordinances, without more, does not constitute a denial of due process. Plaintiffs suggest that this conflict between earlier and later legislation is unprecedented, but it is commonplace. There is a very well-developed body of the law of statutory interpretation concerning apparent conflicts between earlier and later legislation by the same legislative body. See, *e.g.*, William N. Eskridge, Jr., Philip P. Frickey & Elizabeth Garrett, Legislation and Statutory Interpretation 273-75 (2000) ("Statutory Conflicts (No Repeals by Implication; Last Enacted Rule; Specific over General"); *id.* at 273 ("As numerous and various as they are in our polity, statutes are bound to collide. Some rules of thumb seek to avoid unnecessary collisions."). The current edition (the seventh) of the venerable Sutherland on Statutory Construction has hundreds of pages in Chapters 22 and 23 on the myriad ways in which new statutes amend, repeal, or otherwise interact with older statutes. Nothing more is alleged here.

Moreover, many federal cases hold that a state's violation of a state statute does not, as such, violate the federal Constitution. As we explained in *Archie v. City of Racine*:

> [Plaintiff's argument] is another form of the contention that the Constitution requires a state to obey its own law. A reader could see in the phrase "due process of law" a requirement of "obedience to law," and there is some historical support for such a view, see *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 (1856), at least to the extent "law" meant procedures established by law. The phrase does not have such a meaning for the contemporary Court, however, for that body has rejected the equivalence repeatedly, e.g., *Barney v. City of New York*, 193 U.S. 430 (1904); *Herbert v. Louisiana*, 272 U.S. 312, 316 (1926); *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Davis v. Scherer*, 468 U.S. 183, 193-96 (1984).

847 F.2d 1211, 1216 (7th Cir. 1988) (en banc); see also *Snowden*, 321 U.S. at 11 ("Mere violation of a state statute does not infringe the federal Constitution. And state action, even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature.") (internal citations omitted); *Garcia v. Kankakee County Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002) ("a unit of state or local government does not violate the federal Constitution just because it violates a state or local law, including the law of contracts"); *Archie*, 847 F.3d at 1217 ("A state ought to follow its law,

but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law.").

III. *Conclusion*

Because Count I of plaintiffs' federal complaint has been pled to seek federal court review of a state court's decision, Count I is barred by the *Rooker-Feldman* doctrine. The judgment of the district court dismissing Count I for lack of jurisdiction is therefore AFFIRMED.