In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3869

LEROY JOHNSON, administrator,
Shirley T. Sherrod MD PC Target Benefits
Pension Plan and Trust,

*Plaintiff-Appellant*,

*v.*

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:12-cv-02545—**John W. Darrah**, *Judge.*

ARGUED APRIL 22, 2013—DECIDED MAY 20, 2013

Before WOOD, TINDER and HAMILTON, *Circuit Judges.*

TINDER, *Circuit Judge.* Leroy Johnson, the administrator of the Shirley T. Sherrod MD PC Target Benefit Pension Plan and Trust (hereinafter "the Plan"), brings this suit against the Plan's custodian, Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter "Merrill Lynch").

Despite the fact that he is the Plan's administrator and sole fiduciary, Johnson alleges that Merrill Lynch has refused to abide by his instructions and "has exercised control over Plan assets by refusing to make distribution to Shirley T. Sherrod." As a result, Johnson asks the federal court to "[o]rder Merrill Lynch to abide by Johnson's directions regarding any disposition of Plan assets."

Although Johnson has sued Merrill Lynch—suggesting that Johnson and Merrill Lynch have a dispute—in reality, the two parties seem to agree on all the major issues. For instance, both Johnson and Merrill Lynch agree that the Plan is a retirement account that is exempt from garnishment under the anti-alienation provision of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1056(d). Both parties also agree that a single Plan participant, Sherrod, has made a claim for benefits from the Plan but has been unable to collect anything due to a freeze on distributions to her from the account. Moreover, both parties agree that this freeze is the result of a Michigan state court order in a post-judgment collection proceeding.

In sum, although Merrill Lynch concedes that a Plan participant has been injured, Johnson concedes that the Plan participant's injury is fairly traceable to a Michigan state court order, *and not the defendant*, Merrill Lynch. U.S. Const. art. III, § 2, requires a plaintiff to have an injury that is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992) (quotation and citation omitted). If the plaintiff's injury is not fairly traceable to the defendant, the plaintiff lacks standing to bring suit against the defendant, and the federal court lacks subject-matter jurisdiction to adjudicate the matter. *Id.* Here, Johnson has failed to identify an injury that is fairly traceable to the defendant, so Johnson does not have standing to bring suit against Merrill Lynch. Thus, we affirm the district court's dismissal of the case for lack of subject-matter jurisdiction.

**I**

Because the freeze order at the center of the present case arose from a post-judgment proceeding in Michigan state court, a brief review of the related state litigation is warranted. Michael S. Sherman and his affiliated medical practice filed suit against Shirley T. Sherrod and her affiliated medical practice over a contract dispute in the Wayne County, Michigan, Circuit Court. On June 25, 2010, the Wayne County Circuit Court granted summary judgment to Sherman and entered a judgment of $181,048.58 against Sherrod. Sherman filed a writ of garnishment on Sherrod's accounts at Merrill Lynch approximately four months later. Merrill Lynch, as a result, disclosed to Sherman the four accounts in which Sherrod had an interest: a personal account, an account in the name of her medical practice, an individual retirement account, and the Plan (described in the disclosure as "self-directed retirement account" in the name of "SHIRLEY T SHERROD MD PC"). Never-

theless, Merrill Lynch warned Sherman in its disclosure that it did "not have control over and therefore c[ould] not freeze or otherwise restrain or liquidate" the assets of the Plan.

Although Merrill Lynch did not believe that it could exercise control over the Plan, the Wayne County Circuit Court believed that it could. On February 4, 2011, the Circuit Court judge issued a blanket order prohibiting Sherrod (or anyone "acting for or on [her] behalf or in active concert or participation" with her) "from directly or indirectly selling, transferring, assigning, destroying, concealing, encumbering, hypothecating, or otherwise disposing of . . . assets, real or personal property, money, or things in action *now held or hereafter acquired by or becoming due to them*" (emphasis added). The state-court order did not specifically mention the Plan account, but understandably, Merrill Lynch read the order's broad and inclusive language—ordering a freeze on all assets becoming due to Sherrod—to include distributions from the Plan account. As a result, Merrill Lynch froze the Plan account with respect to Sherrod and, despite her retirement, prohibited any distributions to her until further court order. (Note that Merrill Lynch only froze the Plan account with respect to Sherrod. The Plan account also contains assets that will become due to the seventeen employees of Sherrod's former medical practice upon their retirements. Merrill Lynch emphasizes that if any of Sherrod's former employees requests a distribution, it will "not . . . refuse instructions from the Plan administrator relating to any Plan Participant other than Dr. Sherrod.")

Merrill Lynch never prohibited distributions to Sherrod from the Plan account until it was compelled to do so by Wayne County Circuit Court order. Moreover, when the Plan administrator filed a motion to quash the garnishment proceeding with respect to the Plan account, Merrill Lynch supported the Plan administrator. (Incidentally, the Plan administrator was Sherrod herself until May 30, 2012. Johnson only took over as Plan administrator after the instant suit was filed in federal court—in an apparent attempt to render the state-court and federal-court parties non-identical.) In this motion, the Plan administrator argued that the garnishment proceeding and resulting freeze should be quashed because the Plan was an "employee pension benefit plan" as defined by ERISA at 29 U.S.C. § 1002(2). Therefore, 29 U.S.C. § 1056(d) prohibited its benefits from being "assigned or alienated" by state-court order. When arguing the motion to quash, the administrator even acknowledged that Merrill Lynch supported the Plan's position, in an attempt to strengthen its argument that federal law prohibited the freeze (and ultimately, the garnishment) of the Plan account.

In spite of the fact that both the Plan administrator and Merrill Lynch viewed the Plan as an "ERISA qualified pension account" not subject to garnishment, the Wayne County judge denied the administrator's motion to quash. The new Plan administrator, Johnson, decries this denial as erroneous and clearly contrary to federal law, but it appears that the former Plan administrator was at least partially responsible for the denial. Before denying the motion to quash, the Wayne

County judge had ordered Sherrod (in her former capacity as Plan administrator) to produce documents proving that the Plan was an ERISA "qualified retirement account," but she never did. Without sufficient documentation, Sherrod apparently hoped the judge would take her on her word.[1]

Notwithstanding Sherrod's failure to produce adequate documentation demonstrating that the Plan was protected from garnishment under 29 U.S.C. § 1056(d), Merrill Lynch continued to side with Sherrod and the Plan. On February 28, 2012, Merrill Lynch filed a motion to release the freeze on the Plan account in the Wayne County Circuit Court. As part of its effort to release the freeze, Merrill Lynch drafted and circulated an order proposing that the garnishment on the Plan account be "hereby released and further withholdings discontinued." Merrill Lynch successfully negotiated this order with Sherman, and as a result, Sherman stated at a hearing in the Wayne County Circuit Court on April 13, 2012 that he had "no objection to Merrill Lynch releasing the funds . . . [and] withdrawing our garnishment" of the Plan account. After Sherman's statement, the Wayne County judge initially agreed to grant the motion to release and enter Merrill Lynch's proposed order. It seemed that Sherman, Merrill

---

[1] It is still not clear whether the Plan is actually an ERISA-qualified account protected from garnishment by 29 U.S.C. § 1056(d). Fortunately, we need not decide here whether the Plan is truly ERISA-qualified.

Lynch, the Wayne County judge, and Sherrod had at last reached a consensus regarding the Plan account—until Sherrod suddenly reversed course.

During the fourteen months between the February 4, 2011 freeze order and the April 13, 2012 hearing, Sherrod (in her capacity as Plan administrator) had continually argued for a release of the freeze on the Plan account due to its protected status under ERISA. Sherrod filed a motion to reconsider the February freeze order on November 22, 2011. The Wayne County judge denied her motion to reconsider, and Sherrod appealed this denial to the Michigan Court of Appeals in January 2012. That appeal currently remains pending. Sherrod also filed the instant case in federal district court on April 6, 2012, seeking an "[o]rder [for] Merrill Lynch to abide by [the Plan administrator's] directions" to release funds to Sherrod, despite the Wayne County Circuit Court order freezing the account. Given that Sherrod had been pursuing every possible avenue to gain relief from the freeze order, Merrill Lynch believed—not surprisingly—that Sherrod's foremost concern was releasing the funds in the Plan account.

So imagine Merrill Lynch's surprise at the April 13, 2012 hearing when Sherrod *opposed* its motion and proposed order to release the Plan account freeze. Despite the fact that both Merrill Lynch and Sherman had agreed to the proposed order—and despite the fact that the proposed order would have granted Sherrod immediate relief from the freeze—Sherrod urged the

Wayne County judge to deny Merrill Lynch's motion until the Michigan Court of Appeals had reached a decision on Sherrod's January 2012 appeal. Until that time, Sherrod believed that the Wayne County Circuit Court

> ha[d] no jurisdiction whatsoever to hear this motion because . . . [t]he [Michigan] Court of Appeals has accepted it, your decision [freezing the Plan account], for a decision as an appeal. . . . [Y]ou can't modify it now. You can't play with it anymore. It's funny that everybody on this side of the bench believes the court was wrong now back in December.

Predictably, the Wayne County judge withdrew his initial approval of the proposed order, followed Sherrod's recommendation, and denied Merrill Lynch's motion to release the Plan account freeze.

Merrill Lynch was undoubtedly betrayed in its attempt to support Sherrod at the April 13th hearing. But this betrayal did not stop Merrill Lynch from once again siding with Sherrod (and later, Johnson) in the Michigan Court of Appeals. On May 22, 2012, Merrill Lynch filed a response asking the Michigan Court of Appeals to "set aside the trial court's February 4, 2011 Order Prohibiting Third-Party Plaintiff from Transferring or Otherwise Disposing of Assets and the trial court's Orders Denying Motion to Set Aside Order Freezing Defendant's Assets and Order Denying Motion to Quash Garnishment." Merrill Lynch has continued to support Sherrod and Johnson's position on multiple occasions in multiple courts—in spite of all the road-

blocks that Sherrod and Johnson have thrown in its way, including the present federal lawsuit.

Consequently, Merrill Lynch responded to the present federal lawsuit by immediately pointing out its continual support of Sherrod and Johnson throughout the related Michigan litigation. In its Fed. R. Civ. P. 12(b)(1) motion to dismiss this suit for lack of subject-matter jurisdiction, Merrill Lynch argued that it was not "adverse" to the Plan administrator's position. Any past injury that the Plan administrator had suffered was traceable to the Wayne County Circuit Court, not to Merrill Lynch, and any "threat of future injury" to the administrator was "self-inflicted." Therefore, the Plan administrator could "not satisfy the standing or ripeness requirements of Article III." Furthermore, Merrill Lynch argued that the *Rooker-Feldman* doctrine, which "precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . no matter how erroneous or unconstitutional the state court judgment may be," also stood in the way of federal subject-matter jurisdiction. *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (quotation and citations omitted). According to Merrill Lynch, the current Plan administrator was seeking precisely the same relief from the federal court system as he was already seeking from the Michigan court system; in essence, the administrator was asking the federal court "to act impermissibly as a state appellate court and enter an order that Merrill Lynch comply with all Plan requests, even though such relief would obviously . . . interfere with Dr. Sherrod's appeal, which remains pending."

On December 20, 2012, the district court judge agreed with all of Merrill Lynch's arguments and dismissed the federal case for lack of subject-matter jurisdiction. Characterizing it as "apparent from the actions taken by Merrill Lynch in the Wayne County Circuit Court that Merrill Lynch's position is aligned with that of the Plaintiff," the judge could not find a case or controversy that existed between Merrill Lynch and the current Plan administrator. (Recall that Johnson had replaced Sherrod as Plan administrator on May 30, 2012.) Consequently, the case failed to satisfy federal jurisdictional requirements both on standing and ripeness grounds. Yet even if the case had not failed to meet the standing and ripeness requirements, the district judge found that it would have been barred by the *Rooker-Feldman* doctrine. Quoting *Commonwealth Plaza Condo. Ass'n v. City of Chicago*, 693 F.3d 743, 746 (7th Cir. 2012), the judge noted that "'[a]bsent [a] state court ruling, plaintiffs would not have suffered the alleged injury they are asking the federal courts to redress, and that is a clear symptom of the *Rooker-Feldman* bar.'" The district court judge believed that the Plan administrator was, in essence, seeking a review of a Michigan state court judgment, which lower federal courts "are barred [from doing] by the *Rooker-Feldman* doctrine." As a result, the judge dismissed the federal case for lack of subject-matter jurisdiction based on standing, ripeness, and the *Rooker-Feldman* doctrine. Johnson, in his capacity as current Plan administrator, filed a timely appeal with our court, and we now review the district court's dismissal

for lack of subject-matter jurisdiction *de novo*. *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008).

**II**

Our review of the Plan administrator's case against Merrill Lynch both begins and ends with the issue of standing, which is the "irreducible constitutional minimum" required to bring a case in federal court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (quoting *Lujan*, 504 U.S. at 560). Standing arises under the "case or controversy" requirement, found in U.S. Const. art. III, § 2, and "'serv[es] to identify those disputes which are appropriately resolved through the judicial process.'" *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 459 U.S. 149, 155 (1990)). In furtherance of this purpose, standing requires plaintiffs to have (1) an "injury in fact," (2) an injury that is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," and (3) an injury that is "likely . . . [to] be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (quotations and citations omitted). The plaintiff in this case, the Plan administrator, cannot satisfy the second requirement and cannot bring suit against Merrill Lynch.

We do not dispute that the Plan administrator has an injury in fact, thus fulfilling the first standing requirement. One of the Plan participants, Sherrod, has requested a distribution of funds from the Plan account. If not for the freeze on distributions to Sherrod, the

Plan administrator would be able to make the requested distribution because Sherrod is otherwise qualified to receive these funds (since she has reached the minimum required age and is now retired from the medical profession). As the Plan administrator points out in his brief, the freeze renders him "unable to follow the terms of the Plan and make a distribution to a participant entitled to a distribution." Thus, the Plan administrator has an injury in fact.

Although the Plan administrator has an injury in fact, that injury is not fairly traceable to the defendant, Merrill Lynch. Merrill Lynch is not responsible for the freeze on the Plan account; the Wayne County Circuit Court judge is responsible for the freeze. His February 4, 2011 blanket freeze order prohibited the distribution of any assets becoming due to Sherrod; Merrill Lynch simply followed the directions of that court order—even though Merrill Lynch disagreed with it. Like the Plan administrator, Merrill Lynch believed that the Plan was an "ERISA qualified pension account," protected from garnishment by 29 U.S.C. § 1056(d). It is for that reason that Merrill Lynch left the account alone until ordered to do otherwise by the February 4th order. The Plan administrator even admits that the Wayne County judge's order—and not Merrill Lynch—is to blame for the current freeze on the Plan account, remarking in his brief to our court, "Here, a state court suit has made it impossible for a fiduciary of a pension plan to carry out its duties under ERISA."

Nonetheless, the Plan administrator seems to think that Merrill Lynch should have ignored the Wayne County

Circuit Court order if it truly believed that the order was in violation of federal ERISA law. But in such instances, the directive of Michigan law is clear: "A party must obey an order entered by a court with proper jurisdiction, *even if the order is clearly incorrect*, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Kirby v. Mich. High Sch. Athletic Ass'n*, 585 N.W.2d 290, 297 (Mich. 1998) (emphasis added). Consequently, if Merrill Lynch had permitted the distribution of Plan funds to Sherrod after February 4, 2011, then the Wayne County judge would have had clear grounds to hold Merrill Lynch in contempt of court.

Merrill Lynch had no choice but to comply with the Wayne County Circuit Court order. And Merrill Lynch followed the order exactly by refusing to distribute funds to Sherrod. The Plan administrator alleges in his brief that Merrill Lynch went above and beyond the order by freezing distributions to all eighteen Plan participants, and not just to Sherrod. But this allegation is simply not true. Throughout the pendency of this suit, Sherrod is the only participant in the Plan who has requested a distribution. Had any other of the Plan's eighteen participants requested a distribution, Merrill Lynch maintains that it would "not . . . refuse instructions from the Plan administrator."

No matter how the Plan administrator attempts to construe the facts of this case, his injury is not "fairly trace[able] to . . . the defendant," Merrill Lynch. *Lujan*, 504 U.S. at 560. Instead, the Plan administrator's

injury is "th[e] result [of] the independent action of some third party not before the court"—namely, the independent action of a judge on the Wayne County Circuit Court. Indeed, if the Plan administrator's injury is fairly traceable to anyone else besides the Wayne County judge, it is traceable to the Plan administrator himself. The Wayne County judge may have been initially responsible for the injury since he issued the February 4, 2011 order prohibiting any distributions to Sherrod. But arguably, the Plan administrator is responsible for the continuation of the injury past April 13, 2012, when the Plan administrator rejected the proposed agreement to unfreeze the Plan account.

In sum, the Plan administrator cannot trace his injury to Merrill Lynch, and therefore, cannot meet the second requirement for Article III standing as outlined by *Lujan*, 504 U.S. at 560-61. Since a plaintiff must meet all three requirements in order to have standing—and the Plan administrator cannot meet at least one of these requirements—then the Plan administrator lacks standing to bring suit against Merrill Lynch. Without standing, the federal court has no subject-matter jurisdiction to adjudicate the Plan administrator's claim, and the case must be dismissed.

## III

Because we find that the Plan administrator lacks Article III standing to bring the present suit, we need not address Merrill Lynch's ripeness argument. (Nevertheless, we note in passing that, given Merrill Lynch's

continual support of the Plan administrator's position in the Michigan courts, we have a difficult time perceiving an actual dispute between the parties. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 999 (7th Cir. 2011) (explaining that ripeness requires "an actual dispute between parties with adverse legal interests for a court to hear a case or issue").) Nor do we need to address Merrill Lynch's more complicated *Rooker-Feldman* argument. Our finding that the Plan administrator cannot trace his injury to the defendant, Merrill Lynch, gives us sufficient grounds to AFFIRM the district court's dismissal of the case for lack of subject-matter jurisdiction.