**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 28, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

HAL LEWIS HEBERT,

      Petitioner-Appellant,

v.

KEVIN MILYARD; THE ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

      Respondents-Appellees.

No. 11-1561
(D.C. No. 1:11-CV-00021-MSK)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **EBEL**, Circuit Judges.

Hal Lewis Hebert, a Colorado state prisoner convicted of first-degree murder, appeals the district court's denial of relief under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

### Pretrial Events

The following summary is taken from the order of the state postconviction court that denied Mr. Hebert's motion to vacate his conviction. Mr. Hebert's wife, Carol, left a voice mail for a friend at 4:32 p.m. on April 11, 2001. She was not seen or heard from again. Some 30 minutes after the voice mail, a neighbor saw Mr. Hebert back Carol's car into the Heberts' garage and close the door. At 6:00 p.m. Mr. Hebert went alone to a neighborhood bar that he frequented with his wife. He was sweating, acted strangely, and had several drinks within 20 minutes.

About 11:00 p.m. Carol's car was seen parked and running in an east Denver neighborhood. An hour later Mr. Hebert called a friend and said that Carol had not returned home from shopping. Mr. Hebert returned to the bar, asking if anyone had seen her, and then at 2:00 a.m. drove to the police station, reporting Carol as missing.

On April 12, at 4:00 p.m., bystanders inspected Carol's car, which was still parked and running, finding a purse on the front console and Carol's body in the trunk. A plastic Listerine bottle with a bullet hole through the bottom was also in the trunk. Police identified the car's owner, and began surveilling the Hebert home later that evening. When Mr. Hebert emerged, they detained him and searched the home, finding blood droplets leading from the home's office to the garage and on one of Mr. Hebert's shoes by the front door.

Further investigation indicated that Carol had been shot at close range in the back of the head with a .22 caliber bullet as she sat at her office desk. Pieces of plastic from the Listerine bottle were recovered from her hair. Someone had tried to cleanse the home of blood. There were no signs of forced entry.

In the basement of the Hebert home, detectives found a makeshift shooting range. There were numerous .22-caliber shell casings and another Listerine bottle with a bullet hole through the bottom. Apparently the bottle was used as a silencer.

**Additional Matters at Trial**

Mr. Hebert's former lover testified that he wrote her after being arrested, stating that "he would never intentionally hurt Carol" but "there was an accident, a terrible grievous accident, Carol was hurt badly and she died." Trial Tr., June 25, 2003, at 71. Similarly, a bail bondsmen testified that Mr. Hebert told him that he loved his wife, and "he didn't mean to intentionally kill her." *Id.* at 105.

Linda Davis testified that she and her late husband had been friends with the Heberts. Mr. Hebert had given her husband some books while he was sick. One of the books, a mystery novel, involved disposing of a body by leaving it in the trunk of the victim's car and then abandoning the car in a bad neighborhood with the keys in the ignition, hoping that it would be stolen.

Of particular significance is testimony concerning the suspected murder weapon, which was never found. Ms. Davis testified that her husband had bought a "semi-automatic handgun" with a "double stamped serial number" from a man named

- 3 -

Richard White and then sold it to Mr. Hebert. Trial Tr., June 24, 2003, at 130. Mr. White testified that he sold "either a Beretta .22 automatic or a little Cobray .410 derringer" to Ms. Davis's husband. *Id.* at 159. But according to Mr. White, the Beretta was a "long rifle," *id.* at 160, and it was not "double stamped with two serial numbers," *id.* at 165. Although a double-stamped "9 millimeter Makarov" handgun was found in the Hebert home, it was excluded as the murder weapon. Trial Tr., June 23, 2003, at 102; *see also id.* at 103, 112. And Ms. Davis believed that the gun her husband had purchased was not a Beretta.

In closing arguments the prosecutor did not attempt to resolve the discrepancies in the testimony regarding the guns, and instead simply asserted that Mr. Hebert shot Carol with "a small-caliber handgun." Trial Tr., June 27, 2003, at 7.

### Posttrial Events

The jury found Mr. Hebert guilty on June 27, 2003. Several months later, police charged Mr. White "with a September 10, 2003, robbery/murder in Arapahoe County, Colorado." Aplt. App. at 103. Ultimately, "Mr. White was indicted for crimes [involving multiple murders, kidnappings, and sexual assaults] committed between August 1, 2002 and February 1, 2003." *Id.* at 99.

After Mr. Hebert's conviction was affirmed on direct appeal in February 2007, he filed a state postconviction motion, arguing that in May 2007 he had become aware that Mr. White was "an actively psychotic serial killer," *id.* at 103, and that the state had violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing

to provide evidence of Mr. White's crimes "upon discovery by the prosecution," *id.* at 110. The original trial judge denied the motion, stating that the evidence was not material to the trial's outcome. The Colorado Court of Appeals affirmed, but on the ground that Mr. White "was indicted months after [Mr. Hebert] was convicted, and there is no evidence to suggest that the prosecutor was aware of [Mr. White's] crimes prior to [Mr. Hebert's] conviction." *Id.* at 62.

Mr. Hebert then filed a pro se § 2254 application raising, among other things, the *Brady* issue. The district court denied relief. It assumed without deciding that *Brady* requires the disclosure of evidence discovered posttrial and before the conviction becomes final on appeal, but concluded that the evidence regarding Mr. White's criminal history was not material.

Mr. Hebert retained counsel, and we issued a certificate of appealability on the *Brady* issue.

## DISCUSSION

### Standards of Review

"We review the district court's legal analysis of the state court decision *de novo*." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court can grant relief on claims adjudicated on the merits in state court only if the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"

- 5 -

28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.*, § 2254(d)(2).

"In applying § 2254(d), we first determine whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Welch v. Workman*, 639 F.3d 980, 991 (10th Cir.), *cert. denied* 132 S. Ct. 292 (2011).

> Clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*Id.* (brackets and internal quotation marks omitted).

### *Brady*

"Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012). "To establish a *Brady* violation the defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." *United States v. Diaz*, 679 F.3d 1183, 1192 (10th Cir. 2012) (internal quotation marks omitted).

Mr. Hebert asserts that "[t]he Colorado Court of Appeals applied the incorrect legal standard as it refused to even address the issue of materiality." Aplt. Br. at 14.

But the Colorado Court of Appeals rejected his claim on the ground that *Brady* imposed no posttrial duty of disclosure, so materiality was irrelevant.

Mr. Hebert argues that *Brady* applies even after trial and at least up to the conclusion of the direct-appeal process. He fails, however, to identify a Supreme Court decision holding that *Brady* obligations continue after trial. Although he relies on *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987), it involved only a preconviction failure to disclose, *see id.* at 44-45, and discussed an "ongoing" duty to disclose only in the context of the trial proceedings, *id.* at 60. Moreover, the Supreme Court has recently said that "nothing in [its] precedents suggest[s] that [*Brady*'s] disclosure obligation continue[s] after the defendant [is] convicted and the case [is] closed." *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009); *see Skinner v. Switzer*, 131 S. Ct. 1289, 1300 (2011) ("*Brady* announced a constitutional requirement addressed first and foremost to the prosecution's conduct pretrial."). In this case it appears undisputed that the prosecution learned of Mr. White's criminality only after Mr. Hebert's trial concluded.

To be sure, this court in a pre-AEDPA case, *Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997), accepted the government's concession in that case that the duty to disclose continues through direct appeal. Under AEDPA, however, our inquiry in Mr. Hebert's case focuses exclusively on holdings of the Supreme Court. *See House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

Thus, we conclude that "[t]he absence of clearly established federal law is dispositive [of Mr. Hebert's *Brady* claim] under § 2254(d)(1)." *Id.* at 1018.

The judgment of the district court is AFFIRMED.

Entered for the Court


Harris L Hartz
Circuit Judge