# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 16, 2018        Decided May 28, 2019

No. 17-7141

D.C. HEALTHCARE SYSTEMS, INC.,
APPELLANT

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01644)

*Jared P. Marx* argued the cause for appellant. With him on the briefs were *Mark A. Grannis* and *Steven A. Fredley*.

*Sonya L. Lebsack*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees District of Columbia, et al. With her on the brief were *Karl A. Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General, and *Stacy L. Anderson*, Acting Deputy Solicitor General.

*Laura Metcoff Klaus* and *Anna B. Laakmann* were on the brief for appellees Amerihealth Caritas District of Columbia, Inc. and Amerihealth Caritas Health Plan.

*Clifford M. Sloan* was on the brief for appellee Mercer, LLC.

Before: GARLAND, *Chief Judge*, and GRIFFITH and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: D.C. Chartered Health Plan was a health insurer that contracted with the District of Columbia to provide healthcare services for the District's low-income residents. In 2012, the D.C. Department of Insurance, Securities, and Banking found that Chartered was in financial distress and placed the company into rehabilitation, a statutorily prescribed receivership process in which the District's Insurance Commissioner is given broad authority, as the Rehabilitator, to take any action "deemed necessary or appropriate to reform and revitalize the insurer." D.C. Code § 31-1312(c). The Superior Court of the District of Columbia oversees the Rehabilitator and may approve a reorganization plan the Rehabilitator proposes as long as the plan is "fair and equitable to all parties concerned." *Id.* § 31-1312(e). Here, as part of the rehabilitation proceedings, the Superior Court approved the Rehabilitator's proposal to reorganize Chartered, to sell its assets to another health insurer, and to settle all of its claims against the District of Columbia and its current and former officials.

Appellant D.C. Healthcare Systems, Inc., the sole shareholder of Chartered, actively participated in the rehabilitation, although it was not a formal party to the proceedings. After the Superior Court approved the reorganization plans, Healthcare Systems filed this federal lawsuit against the District and multiple other defendants, including the Rehabilitator, alleging that the defendants' unlawful and unconstitutional actions manufactured Chartered's

financial distress and forced it into the rehabilitation proceedings.

The district court dismissed Healthcare Systems' suit for lack of subject-matter jurisdiction. The ground the court cited for dismissal was the *Rooker-Feldman* doctrine, which bars "state-court losers" from seeking federal "district court review and rejection" of state-court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). We reverse because *Rooker-Feldman* is inapplicable to this case.

I

The District of Columbia provides healthcare coverage for eligible low-income adults, uninsured children, and residents with disabilities through privately owned insurance companies that serve as managed care organizations.[1] Chartered was one such organization that operated pursuant to a contract administered by the D.C. Department of Health Care Finance. Under that contract, from 1987 to 2013, Chartered paid for healthcare services for more than 100,000 District residents. Those residents were enrolled in the federal Medicaid program or the D.C. HealthCare Alliance, a locally funded program that provides medical coverage for uninsured District residents who do not qualify for Medicaid. In return, Chartered was reimbursed at a per-member, per-month rate -- known as a "capitation rate." By law, the capitation rate must be set at "actuarially sound" levels, Am. Compl. ¶ 2, and must cover "(i) 100% of what Chartered was expected to pay providers plus (ii) a small percentage more . . . to cover Chartered's administrative costs, a premium tax assessment, and a small

---

[1] "Managed care organizations are insurance companies that allow the government to outsource the management of healthcare for recipients of public assistance." Healthcare Sys. Br. at 4.

amount for profit," *id.* ¶ 34. *See* 42 C.F.R. §§ 438.4(a), 438.5(b) (defining "actuarially sound capitation rates" and establishing rate development standards). According to Healthcare Systems, the District began substantially underpaying Chartered in 2008. Am. Compl. ¶ 3.

Following the 2010 enactment of the federal Affordable Care Act, which changed the eligibility standards for Medicaid, the District transferred approximately 23,000 residents from the Alliance program to Medicaid. *Id.* ¶ 36. Healthcare Systems alleges that, because Medicaid beneficiaries are entitled to certain prescription-drug and other benefits not covered by Alliance, this transfer caused Chartered's costs to skyrocket. *Id.* ¶¶ 36-37. Despite Chartered's repeated requests that the District increase capitation rates to keep up with the rising cost of care, the District allegedly refused to adjust the rates. *Id.* ¶¶ 37-40.

The D.C. Insurers Rehabilitation and Liquidation Act requires health insurers like Chartered to maintain certain capital levels. *See* D.C. Code § 31-3451.01. A "Mandatory Control Level Event" takes place when a health insurer's total adjusted capital is less than the required minimum. *See id.* § 31-3451.01(12). When such an event takes place, the Insurance Commissioner is statutorily required to "take such action as is necessary to place the health organization under regulatory control under . . . Chapter 13 of this title." *Id.* § 31.3451.06(a).

Under Chapter 13, the Commissioner may petition the D.C. Superior Court for an order authorizing him or her to rehabilitate an insurer that "is in such a condition that the further transaction of business would be hazardous financially to its policyholders, creditors, or the public." *Id.* § 31-1310(1). A rehabilitation order appoints the Insurance Commissioner as the Rehabilitator and directs him or her "to take possession of the assets of the insurer, and to administer them under the general supervision of

the court." *Id.* § 31-1311(a). "If the rehabilitator determines that reorganization, consolidation, conversion, reinsurance, merger, or other transformation of the insurer is appropriate, the rehabilitator shall prepare a plan to effect the changes." *Id.* § 31-1312(e). The Superior Court may approve the Rehabilitator's proposed plan as long as it is "fair and equitable to all parties concerned." *Id.*

In April 2012, then-Insurance Commissioner William White informed Chartered's president that its 2011 financial statement reflected a level of "risk-based capital" that was "significantly below" the minimum required under D.C. law. Am. Compl. ¶ 47. White then retained Daniel Watkins as a consultant to conduct a financial review of Chartered. In October 2012, White, Watkins, and Department of Health Care Finance Director Wayne Turnage began working to obtain consent from Chartered's board of directors and its sole shareholder -- appellant Healthcare Systems -- to place Chartered into rehabilitation proceedings. On October 18, Healthcare Systems gave its written consent.

The next day, Commissioner White filed an emergency consent petition in the Superior Court, seeking to place Chartered into rehabilitation. A Superior Court judge issued an Emergency Consent Order of Rehabilitation, which appointed White as Rehabilitator. White then appointed Watkins as Special Deputy Rehabilitator.

In February 2013, Watkins asked the Superior Court to approve a proposed Plan of Reorganization for Chartered, as well as a proposed Asset Purchase Agreement, under which Chartered's assets would be sold to AmeriHealth, another managed care organization operating in the District. Watkins asked the court to approve the proposals on an expedited basis.

The court held a hearing on March 1, 2013. Although Healthcare Systems did not intervene in the proceedings, it participated as a "party in interest" to oppose approval of the proposals. *See* 3/1/13 Hr'g Tr. 15 (J.A. 176). In particular, Healthcare Systems argued that it was owed about $60 million from the District for services that Chartered had rendered. *Id.* at 8 (J.A. 169). It further argued that the District's refusal to pay that amount was how "Chartered got into financial troubles" in the first place. *Id.* at 9 (J.A. 170). Rejecting the relevance of these arguments, *see infra* Part III, the court issued an order approving the Plan of Reorganization and Asset Purchase Agreement. *See* Order, *District of Columbia v. D.C. Chartered Health Plan, Inc.*, No. 2012 CA 008227 2 (D.C. Super. Ct., filed Mar. 1, 2013) (J.A. 216-18). In so doing, the court found that the Agreement and the Plan were "necessary and appropriate," as well as "fair and equitable to all parties concerned." *Id.* at 2 (J.A. 217); *see* D.C. Code § 31-1312(e).

In July 2013, Rehabilitator White, Special Deputy Rehabilitator Watkins, and Department of Health Care Finance Director Turnage negotiated a Settlement Agreement, under which Chartered (by then controlled by Rehabilitator White) would release all claims it had against the District and its current and former officials, in exchange for $48 million to be used to make payments that Chartered owed to healthcare providers. Am. Compl. ¶¶ 86, 91. The Rehabilitator sought the Superior Court's approval of the settlement, and the court held a hearing on the subject on August 21, 2013. Healthcare Systems participated in the hearing to oppose approval.

At the hearing, the Superior Court indicated that it planned to approve the Settlement Agreement, explaining that "the court's role in the rehabilitation process is to supervise the Rehabilitator and to review the actions for abuse of discretion and not to substitute the court's judgment . . . for that of the

Rehabilitator." 8/21/13 Hr'g Tr. 9 (J.A. 295) (transcription error corrected). The following day, the court issued an order of approval. *See* Order, *District of Columbia v. D.C. Chartered Health Plan, Inc.*, No. 2012 CA 008227 2 (D.C. Super. Ct., filed Aug. 22, 2013) (J.A. 316-18). Applying the deferential standard that it had explained in the hearing, the court concluded: "This Court, in its supervisory role over the rehabilitation, has not been presented with any evidence of an abuse of discretion on the part of the Rehabilitator in negotiating this settlement on behalf of Chartered with the District of Columbia." *Id.* at 1 (J.A. 316).

Healthcare Systems appealed the Superior Court's approval of the Plan of Reorganization, Asset Purchase Agreement, and Settlement Agreement to the District of Columbia Court of Appeals. On the eve of the scheduled oral argument, however, Healthcare Systems voluntarily dismissed its appeal.

II

In August 2016, Healthcare Systems filed suit in federal district court against the District of Columbia, current Insurance Commissioner Stephen Taylor, former Insurance Commissioner and Rehabilitator White, Special Deputy Rehabilitator Watkins, Department of Health Care Finance Director Turnage, and others.[2] Healthcare Systems' amended complaint alleges that the defendants violated its federal rights under the Fifth Amendment's Just Compensation and Due Process Clauses, and under the Medicaid statute. It further alleges that various of the defendants are liable to it under common-law causes of action

---

[2] The others are AmeriHealth (the managed care organization to which Chartered's assets were sold) and Mercer LLC (an actuarial firm that the Department of Health Care Finance hired to conduct annual reviews of Chartered).

for breach of the contract between Chartered and the Department of Health Care Finance, fraud and fraudulent concealment, and breach of fiduciary duty. Am. Compl. ¶¶ 112-92.

The defendants moved to dismiss the complaint pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. They argued, inter alia, that the *Rooker-Feldman* doctrine deprives the district court of subject-matter jurisdiction, that Healthcare Systems lacks Article III standing, that Healthcare Systems' claims are barred by principles of claim and issue preclusion, that certain claims are barred by the statute of limitations, and that certain defendants are protected by immunity.

The district court dismissed the case solely on the ground that the *Rooker-Feldman* doctrine deprived it of subject-matter jurisdiction. *See D.C. Healthcare Sys., Inc. v. District of Columbia*, 270 F. Supp. 3d 72, 79 (D.D.C. 2017). Quoting the Supreme Court, the district court noted that the doctrine applies to "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil*, 544 U.S. at 284). It found the doctrine applicable in this case because it viewed Healthcare Systems' complaint as "seeking, in essence, to have this Court undo the orders entered by the Superior Court." *Id.* at 80.[3]

---

[3] Although Healthcare Systems had not intervened as a party in the Superior Court rehabilitation proceedings, the district court concluded that the plaintiff was nonetheless a "state-court loser" for purposes of *Rooker-Feldman* because "the Superior Court treated [Healthcare Systems] as a party in all relevant respects." *D.C. Healthcare Sys.*, 270 F. Supp. 3d at 80. The parties dispute whether

We review de novo the district court's dismissal of the appellant's complaint on *Rooker-Feldman* grounds. *See Croley v. Joint Comm. on Judicial Admin.*, 895 F.3d 22, 28 (D.C. Cir. 2018).

## III

The Supreme Court has explained that the purpose of the *Rooker-Feldman* doctrine is to effectuate 28 U.S.C. § 1257, which "'vests authority to review a state court's judgment solely in [the Supreme] Court.'" *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (quoting *Exxon Mobil*, 544 U.S. at 292).[4] As a consequence, "District Courts lack[] subject-matter jurisdiction

---

a plaintiff must have been a formal state-court party for *Rooker-Feldman* to apply. We do not address this issue because we conclude that, even if Healthcare Systems were a party in Superior Court, its federal lawsuit does not "invit[e] district court review and rejection of [the Superior Court's] judgments." *Exxon Mobil*, 544 U.S. at 284; *cf. Lance v. Dennis*, 546 U.S. 459, 466 n.2 (2006) (declining to "address whether there are *any* circumstances, however limited, in which *Rooker-Feldman* may be applied against a party not named in an earlier state proceeding").

[4] Section 1257 states:

> (a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where . . . any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of . . . the United States.

> (b) For the purposes of this section, the term "highest court of a State" includes the District of Columbia Court of Appeals.

over" a federal claim that seeks to review such a judgment. *Id.* at 531. The Supreme Court has repeatedly described the *Rooker-Feldman* doctrine as a "'narrow'" one. *Id.* at 532 (quoting *Exxon Mobil*, 544 U.S. at 284). Indeed, the Court has found it applicable only twice: in the two cases that form its name, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

While observing that "some federal courts" have construed the doctrine "'to extend far beyond the contours of the *Rooker* and *Feldman* cases,'" the Supreme Court has instructed "that *Rooker-Feldman* 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers . . . *inviting district court review and rejection of [the state court's] judgments*.'" *Skinner*, 562 U.S. at 532 (alterations in original) (emphasis added) (quoting *Exxon Mobil*, 544 U.S. at 284).[5] The Court has further instructed that, if "a federal plaintiff present[s] [an] *independent* claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Skinner*, 562 U.S. at 532 (internal quotation marks omitted) (emphasis added). We examine the appellant's claims with those instructions in mind.

---

[5] The full statement in *Exxon Mobil*, which *Skinner* quotes in part, states that *Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced *and* inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284 (emphasis added). Because we conclude that Healthcare Systems' case does not "invite district court review and rejection" of the Superior Court's judgments, we need not decide whether it "complain[s] of injuries caused by" those judgments. For the same reason, we need not decide whether Healthcare Systems falls within the category of "state-court losers." *See supra* note 3.

Healthcare Systems' federal complaint alleges that, beginning years before the rehabilitation proceedings, the defendants intentionally underpaid Chartered (its wholly owned subsidiary) and "actively concealed that fact by repeatedly certifying the soundness of the [capitation] rates." Am. Compl. ¶ 41. After allegedly manufacturing Chartered's financial distress with this underpay-and-conceal scheme, the defendants then allegedly sealed the deal by fraudulently inducing Healthcare Systems to consent to Chartered's rehabilitation. The complaint maintains that this scheme constituted an unconstitutional taking of Healthcare Systems' property without just compensation, a violation of its constitutional due process rights, a violation of its rights under the federal Medicaid statute (regarding its entitlement to actuarially sound capitation rates), a breach of the contract between Chartered and the Department of Health Care Finance (also with respect to actuarially sound rates), fraudulent concealment (again with respect to actuarially sound rates), fraud (with respect to inducing the plaintiff's consent to rehabilitation), and a breach of fiduciary duty by the former and current Insurance Commissioners. *See id.* ¶¶ 112-92.

Applying the Supreme Court's instructions, we conclude that the *Rooker-Feldman* doctrine does not deprive the district court of jurisdiction to decide this case. That is because Healthcare Systems' federal lawsuit does not "invit[e] district court review and rejection of [the Superior Court's] judgments." *Skinner*, 562 U.S. at 532 (internal quotation marks omitted). To the contrary, it presents claims that are "independent" of and distinct from those adjudicated by the Superior Court. *Id.* (internal quotation marks omitted).

Under the District of Columbia statute that governs the rehabilitation of insurers, the Insurance Commissioner may apply to the Superior Court for an order authorizing him to

rehabilitate an insurer based on several possible grounds, including the one that is particularly relevant here: "The insurer is in such a condition that the further transaction of business would be hazardous financially to its policyholders, creditors, or the public." D.C. Code § 31-1310(1). Thereafter, the Rehabilitator "may take such action as deemed necessary or appropriate to reform and revitalize the insurer." *Id.* § 31-1312(c). "If the rehabilitator determines that reorganization . . . or other transformation of the insurer is appropriate, the rehabilitator shall prepare a plan to effect the changes." *Id.* § 31-1312(e). Finally, the court may approve the reorganization plan if it is, "in the judgment of the court, fair and equitable to all parties concerned." *Id.*

As is apparent from this description, the purpose of statutory rehabilitation is neither to make an insurer whole from alleged financial losses nor to correct other violations of law that the insurer may allege. Rather, it is to "reform and revitalize" the insurer, D.C. Code § 31-1312(c), so that its business no longer poses a financial risk to "policyholders, creditors, or the public," *id.* § 31-1310(1). Likewise, the role of the Superior Court in deciding whether to approve a rehabilitation plan is not to adjudicate any single party's constitutional, statutory, or common-law claims. Rather, the court's responsibility -- in the midst of a financial meltdown of an insurer -- is to determine whether the Rehabilitator's proposals are "fair and equitable to all parties concerned," *id.* § 31-1312(e), including "policyholders, creditors, [and] the public," *id*. § 31-1310(1).

The Superior Court judge who supervised Chartered's reorganization was well aware of his court's statutorily designated role and did not exceed it. At the hearing on the Plan of Reorganization and Asset Purchase Agreement, Healthcare Systems argued that the District of Columbia owed it $60 million for past underpayment of services that Chartered had

provided, and that the District's refusal to pay that amount was how "Chartered got into financial troubles" in the first place. 3/1/13 Hr'g Tr. 9 (J.A. 170). In response, the Superior Court made clear that the rehabilitation proceedings were *not* the proper forum to resolve that grievance:

> We're talking about an operation, a health care organization, which isn't going to operate wh[ile] we wait for the 60 million that you say is owed to you, and so why wouldn't that be a lawsuit that you could . . . file and claim damages if the District has done what you have said?

*Id.* at 9-10 (J.A. 170-71). In fact, the Superior Court did not adjudicate any of the federal or common-law claims alleged in Healthcare Systems' district court complaint.[6] Instead, the court approved the Plan and Agreement because it found they were "necessary and appropriate and [we]re fair and equitable to all parties concerned." Order at 2, *District of Columbia v. D.C.*

---

[6] The Superior Court did reject one "allegation of due process violations" by Healthcare Systems. 3/1/13 Hr'g Tr. 35-36 (J.A. 196-97). That allegation was focused on the speed of the rehabilitation process and of the Superior Court's review. *See id.* at 13-15, 20-21, 35-36 (J.A. 174-76, 181-82, 196-97). It is not the same as the procedural due process claim raised in Healthcare Systems' federal complaint, which alleges a long string of administrative abuses that ultimately deprived appellant of its "property without due process of law." Am. Compl. ¶¶ 132-35 (alleging, inter alia, flaws in the "process for determining how much the District owed Chartered," the repeated imposition of administrative sanctions against Chartered "without making any attempt to safeguard the impartiality of the administrative decision-makers," and that "there was no way to compel the Defendants to correct their error" in setting unsound rates "before the catastrophic follow-on consequences showed up in Chartered's financial statements").

*Chartered Health Plan, Inc.* (Mar. 1, 2013) (J.A. 217). It further concluded that "the Agreement . . . would prevent serious disruption for Chartered's enrollees, address the interests of Chartered's employees and provide funds that will help Chartered satisfy its liabilities." *Id*.

The Superior Court took the same approach when approving the Settlement Agreement, under which Chartered (then controlled by Rehabilitator White) released all claims that it had against the District of Columbia and its current and former officials, in exchange for $48 million to be used to pay healthcare providers. In once again rejecting the import of Healthcare Systems' contention that Chartered was entitled to substantially more than the District was paying, the court explained its limited role:

> There can be criticism of any settlement and the evaluation of every claim can always lead one to say that you could have gotten more, but in every case . . . there's compromise and it has to be weighed and I find that the Rehabilitator has done that in this case.

8/21/13 Hr'g Tr. 10 (J.A. 296). This finding did not constitute an adjudication of the individual legal and factual claims later included in Healthcare Systems' federal complaint.

Moreover, it is not only true that Healthcare Systems' federal complaint presents the district court with claims different from those the Superior Court adjudicated in the rehabilitation proceedings. It is also true that the standards of review in the two cases are substantially different. In adjudicating the claims in Healthcare Systems' federal case, the district court will decide questions of law de novo, and the jury or court will decide questions of fact by a preponderance of the evidence without deference to the Rehabilitator's determinations.

By contrast, in reviewing the Plan of Reorganization, Asset Purchase Agreement, and Settlement Agreement, the Superior Court was substantially more constrained. As the Superior Court judge told Healthcare Systems' counsel, "the court's role in the rehabilitation process is to supervise the Rehabilitator and to review the actions for abuse of discretion and not to substitute the court's judgment . . . for that of the Rehabilitator." 8/1/13 Hr'g Tr. 9 (J.A. 295) (transcription error corrected). Indeed, as another Superior Court judge observed in a related case, rehabilitation proceedings are "designed as special, in rem proceedings that do not require findings of fact or conclusions of law" at all. Order at 9, *D.C. Chartered Health Plan, Inc. v. Jeffrey Thompson, et al.*, No. 2013 CA 003752 B (D.C. Super. Ct., filed June 6, 2018). In such proceedings, "the court's role . . . is limited by statute. Courts defer to the business judgment of the rehabilitator and may disapprove only those actions of the rehabilitator which are arbitrary, capricious, or an abuse of discretion." *Id.* (citation omitted). And at the end of the day, that was the only judgment the Superior Court reached in approving the Settlement Agreement:

> This Court, in its supervisory role over the rehabilitation, has not been presented with any evidence of an abuse of discretion on the part of the Rehabilitator in negotiating this settlement on behalf of Chartered with the District of Columbia.

Order at 1, *District of Columbia v. D.C. Chartered Health Plan, Inc.* (Aug. 22, 2013) (J.A. 316).

In short, the federal case brought by Healthcare Systems does not "invit[e] district court review and rejection of [the Superior Court's] judgments." *Skinner*, 562 U.S. at 532 (internal quotation marks omitted). Instead, it "present[s] [an] independent claim." *Id.* (internal quotation marks omitted).

Accordingly, the *Rooker-Feldman* doctrine does not bar Healthcare Systems' federal complaint, and the district court has subject-matter jurisdiction to adjudicate it. *See id.*

Finally, the defendants maintain that, even if Healthcare Systems did not raise its constitutional and other claims in the Superior Court proceedings, it "had every opportunity to litigate" them there. D.C. Appellees Br. at 30. In light of the limited nature of the rehabilitation proceedings, we doubt that Healthcare Systems could have fully litigated all of the claims contained in its federal complaint in those proceedings. But even if it could have, this argument mistakes the doctrine of preclusion for that of *Rooker-Feldman*. As the Supreme Court explained in making short work of a similar argument in *Skinner*:

> Switzer asserts that Skinner could have raised his federal claim in the [state] proceeding. Even if that were so, *Rooker–Feldman* is not simply preclusion by another name, and questions of preclusion unresolved below are best left for full airing and decision on remand.

562 U.S. at 533 n.11 (citations and internal quotation marks omitted).

Because the district court did not address the defendants' preclusion argument, neither do we. *See id.* On remand, the district court remains free to consider that argument, as well as the other grounds the defendants have advanced for dismissal.

## IV

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*